Filed 9/6/22  P. v. Lopez CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE, | C087357 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF1758041) |
| v. | OPINION ON REHEARING |
| JASON MICHAEL LOPEZ, | |
| Defendant and Appellant. | |

A jury convicted defendant Jason Michael Lopez of the crimes of attempted shooting at an occupied vehicle (count 1), active participation in a criminal street gang (Pen. Code, § 186.22, subd. (a)—count 5), and possession of a firearm by a person who has been convicted of a felony (count 7).[1]  The jury found true that defendant committed counts 1 and 7 for the benefit of, at the direction of, or in association with a criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members.  (§ 186.22, subd. (b)(1).)  The jury did not reach a verdict on three

---

[1]  Undesignated statutory references are to the Penal Code.

1

counts of assault with a semiautomatic firearm (counts 2-4), one count of carrying a loaded firearm with the intent to commit a felony (count 6), and one count of possession of ammunition by a convicted felon (count 8). The prosecution subsequently dismissed those charges.

In a bifurcated proceeding, the trial court found true that defendant had two prior serious felony convictions, two prior strike offenses, and one prior prison term.

The court sentenced defendant to a total term of 20 years plus 50 years to life in prison.

On appeal, defendant argued: (1) the trial court improperly instructed the jury with respect to count 1; (2) the trial court erred in admitting photographs taken from a cell phone and his Facebook account; (3) his trial counsel rendered ineffective assistance by failing to move to suppress the cell phone photographs; and (4) the prosecution's gang expert violated defendant's right to confrontation by presenting case-specific hearsay evidence regarding other individual's gang affiliations. In an October 13, 2020 unpublished opinion, we affirmed the judgment.

Defendant petitioned our Supreme Court for review. The Supreme Court granted review and deferred the matter pending consideration and disposition of a related issue in *People v. Garcia*, S250670, and *People v. Valencia*, S250218, or pending further order of the court.

On July 1, 2021, our Supreme Court issued *People v. Valencia* (2021) 11 Cal.5th 818 (*Valencia*).

On September 15, 2021, our Supreme Court transferred the matter back to this court, with directions to vacate our decision and reconsider the cause in light of *Valencia*. Accordingly, we vacated our October 13, 2020 opinion and the parties filed supplemental briefs.

In a new opinion, issued December 8, 2021, we concluded *Valencia* did not change the result and again affirmed the judgment.

2

After our new opinion issued, defendant petitioned for rehearing. He argued we should vacate his conviction for violating section 186.22, subdivision (a) (count 5) and the enhancement findings under section 186.22, subdivision (b), based on newly enacted Assembly Bill No. 333 (Stats. 2021, ch. 699), which was about to go into effect. We granted the petition for rehearing, vacated our December 8, 2021 decision, and directed the People to file a supplemental brief responding to defendant's arguments regarding Assembly Bill No. 333. The People filed a brief conceding that the bill's changes to section 186.22 require us to reverse defendant's conviction for count 5 and the gang-related enhancement findings. Thereafter, defendant filed additional supplemental briefing arguing the failure to bifurcate count 5 and the gang-related enhancements as now required by Assembly Bill No. 333 constitutes structural error that necessitates the reversal of all of his convictions and enhancements. We disagree that the alleged error is structural. Further, defendant has failed to demonstrate prejudice from any error in failing to bifurcate. We will, however, accept the People's concession regarding the reversal of count 5 and the gang-related enhancement findings, which eliminates the need to address defendant's earlier claims regarding the testimony of the gang expert.

We will reverse defendant's conviction on count 5 and the jury's gang-related enhancement findings and remand to give the People an opportunity to retry them under amended section 186.22. In all other respects, we will affirm the judgment.

## I.  BACKGROUND

On May 8, 2016, Victor stopped at a liquor store. As he walked out, defendant asked him if he was from around there. Victor said yes. Defendant asked, "Do you bang?" Victor said "no" and left.

Later that day, Victor and two other men went to buy food for a barbecue. Victor drove. When he stopped at a stop sign at an intersection, he noticed a black SUV that was stopped even though it had the right of way and no stop sign.

Co-defendant Stephon Ramirez, who was in the passenger seat of the black SUV, pointed a semiautomatic firearm at Victor's vehicle. Defendant was jumping up and down in the driver's seat and saying, "pop it, pop it." Ramirez pulled the trigger several times and racked the weapon several times. The gun did not fire.

Based on a hypothetical set of facts that mirrored the evidence, the prosecution's firearms expert opined that there was a malfunction that the operator of the weapon was trying to clear.

## II. DISCUSSION

A. *Instructions on Attempted Shooting at an Occupied Vehicle*

With respect to the crime of attempted shooting at an occupied vehicle, the trial court instructed the jury that the People had to prove: "One, the defendant took a direct but ineffective step toward committing a shooting at an occupied vehicle[, and] two, the defendant intended to commit a shooting at [an] occupied vehicle."

The trial court denied defendant's request for a special instruction that the gun had to be loaded in order for the jury to find him guilty of this offense.[2] In explaining its reasoning, the court stated defendant "had to think it was loaded or he had to be trying to shoot and he attempted, and that's the reason it failed."[3] On appeal, defendant argues the trial court erred in failing to instruct the jury sua sponte on what he argues is an essential

---

[2] Defendants cannot escape liability for attempt to commit a crime "because the criminal act they attempted was not completed due to an impossibility which they did not foresee: 'factual impossibility is not a defense to a charge of attempt.' " (*People v. Reed* (1996) 53 Cal.App.4th 389, 396.)

[3] The court did agree to instruct the jury that it had to find the firearm was loaded to find the defendants guilty of assault with a semiautomatic firearm (counts 2-4). "An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (§ 240.) "The threat to shoot with an unloaded gun is not an assault, since the defendant lacks the present ability to commit violent injury." (*People v. Fain* (1983) 34 Cal.3d 350, 357, fn. 6.)

4

element of the offense of attempted shooting at an occupied vehicle—that defendant had to *believe* the firearm was loaded. We disagree.

As the People note, "[a]n attempt to commit a crime consists of two elements: a specific intent to commit the crime, and a direct but ineffectual act done toward its commission." (§ 21a.) The jury was instructed on attempted shooting at an occupied vehicle accordingly. The jury was instructed on what it means to take a direct step, including that "[i]t is an immediate step that puts the plan in motion so that the plan would have been completed if some circumstance outside the plan had not interrupted the attempt." The court further instructed the jury that "[t]he specific intent required for Count 1—[a]ttempted shooting at an occupied vehicle—is that the defendant intended to shoot a firearm at an occupied vehicle." The court also instructed the jury on finding defendant guilty as an aider and abettor. The court explained the necessary mental state as follows: "For you to find [defendant] guilty of any crime based on a theory that he aided and abetted Mr. Ramirez, you must also find [the] mental state that [defendant] knew that Mr. Ramirez intended to commit the crime, and the specific intent that before or during the commission of the crime, [defendant] intended to aid and abet Mr. Ramirez in committing the crime." In sum, the jury was instructed on the elements of the offense.

" ' " 'It is settled that in criminal cases, even in the absence of a request, a trial court must instruct on general principles of law relevant to the issues raised by the evidence' " and " 'necessary for the jury's understanding of the case.' " ' " (*People v. Molano* (2019) 7 Cal.5th 620, 667.) An instruction that the defendant needed to believe that the gun was loaded to be convicted of attempted shooting at an occupied vehicle appears to be a pin-point instruction in that it would "relate particular facts to a legal issue in the case." (*People v. Saille* (1991) 54 Cal.3d 1103, 1119.) Such an instruction is not required absent a defendant's request. (*Ibid.*) Furthermore, " '[a] legal concept that has been referred to only infrequently, and then with "inadequate elucidation," cannot be considered a general principle of law such that a trial court must include it within jury

5

instructions in the absence of a request.' " (*Molano, supra,* at p. 668.) Defendant concedes he has not found *any* case that concludes as much but, he contends, "*logic dictates* that when the defendant believes the firearm is unloaded or otherwise inoperable[,] pulling the trigger does not constitute the crime of attempted shooting at an occupied vehicle." (Italics added, fn. omitted.) In other words, a defendant who believes a firearm is unloaded or inoperable cannot specifically intend that the firearm expel a bullet at an occupied vehicle. Regardless, defendant's "theory falls far short of a well-established rule that would have required a sua sponte instruction. Because defendant never requested such an instruction, he has forfeited the issue." (*Id.* at p. 669.)[4]

B.     *Admission of Photographs*

Defendant raises two challenges relating to the admission of photographs taken from a cell phone and his Facebook account. He contends there was an insufficient foundation of authenticity to support their admission. He also contends the cell phone photographs were inadmissible because they were seized pursuant to a stale warrant and there was no foundation that the photographs were from the time period set forth in the warrant. Anticipating forfeiture of any right to suppress the photographs, he argues his trial counsel provided ineffective assistance by failing to bring the motion prior to trial. We conclude the trial court did not err in admitting the photographs.

1.     *Trial Court Proceedings*

---

[4] On reply, defendant presents this as a "knowledge element" rather than a question of specific intent and cites *People v. Rogers* (1971) 5 Cal.3d 129, 137, superseded by statute as stated in *People v. Martinez* (2018) 4 Cal.5th 647, 650, which held the trial court erred by failing to instruct on the element of knowledge in the context of the offense of transporting marijuana. This characterization of the issue is no more persuasive. In *Rogers*, our Supreme Court relied in part on its previous opinion explaining that knowledge was an essential element of the transportation offense. (*Id.* at p. 133.) Here, defendant cites no authority indicating knowledge is an element of attempted shooting at an occupied vehicle, and we cannot conclude that it is beyond what has already been subsumed in the instructions.

6

Two cell phones were seized from defendant's SUV. Anthony Herrera, a detective for the City of West Sacramento, testified that he obtained a search warrant and initially took the phones to Investigator John Sadlowski at the Yolo County District Attorney's office for a forensic evaluation, but Sadlowski was unavailable. On August 3, 2016, Herrera took the phones to Probation Officer Sergio Pimentel. Pimentel extracted information from the Samsung phone that day and provided it to Herrera the next day. This information included People's Exhibits 76 through 96.

Herrera also testified that he later obtained a second search warrant and then brought the phones to Sadlowski. Sadlowski testified earlier in the trial that he performed an extraction on the Samsung phone on July 21, 2016. Like Pimentel, Sadlowski testified he was unable to perform an extraction on the second phone. Herrera testified Exhibits 76 through 96 were pictures he observed from either data extraction. Additionally, he took screenshots of photographs from defendant's Facebook account.

Defense counsel later argued the warrant Pimentel conducted his search under was stale under section 1534, subdivision (a), which provides that "[a] search warrant shall be executed and returned within 10 days after date of issuance. A warrant executed within the 10-day period shall be deemed to have been timely executed and no further showing of timeliness need be made. After the expiration of 10 days, the warrant, unless executed, is void." Counsel stated the warrant was signed by the judge on July 21, 2016, which was more than 10 days before Pimentel's extraction from the cell phone.

Defense counsel indicated the second search warrant was signed on August 11, 2016. Defense counsel also argued the prosecution had not laid the foundation that the photographs were taken between December 1, 2015, and May 31, 2016, which he represented was a time limitation written into the warrant.

The court asked why these arguments were not raised prior to trial. At the start of trial, Sadlowski appeared on the prosecution's witness list but Pimentel did not. The People sought permission to add Pimentel to the witness list during trial.

7

The People responded that the issue was litigated in the previous trial and explained that Sadlowski testified in that trial that the July 21, 2016 extraction date on his report was incorrect and he did not receive the cell phone until after Pimentel's search. The prosecution also represented that there was an extension on both warrants and they would not be stale on their face. The trial court found defendant's motion was untimely.

Most of exhibits 76 through 96 were subsequently shown to the jury. Detective Barrantes, the prosecution's gang expert, testified regarding the Norteño gang and its Broderick Boys subset. He also testified regarding the content of these photographs, which depicted gang-related symbols and defendant and other gang members wearing gang-related clothing and making hand signs used by the gang.

Detective Barrantes was also shown the screenshots of photographs from defendant's Facebook account taken by Detective Herrera. Detective Barrantes testified that these photographs also depicted gang-related symbols and defendant and some of the same gang members as the other photographs wearing gang-related clothing and making hand signs used by the gang.

### 2.    *Authentication*

Defendant contends the trial court erred in admitting images obtained from his Facebook account and the cell phone without sufficient foundation of their authenticity. We disagree.

"Authentication of a writing, including a photograph, is required before it may be admitted in evidence. [Citations.] Authentication is to be determined by the trial court as a preliminary fact [citation] and is statutorily defined as 'the introduction of evidence sufficient to sustain a finding that it is the writing that the proponent of the evidence claims it is' or 'the establishment of such facts by any other means provided by law.' " (*People v. Goldsmith* (2014) 59 Cal.4th 258, 266 (*Goldsmith*).)

The court in *Goldsmith* explained: "[T]he proof that is necessary to authenticate a photograph or video recording varies with the nature of the evidence that the photograph

8

or video recording is being offered to prove and with the degree of possibility of error. [Citation.] The first step is to determine the purpose for which the evidence is being offered. The purpose of the evidence will determine what must be shown for authentication, which may vary from case to case. [Citation.] The foundation requires that there be sufficient evidence for a trier of fact to find that the writing is what it purports to be, i.e., that it is genuine for the purpose offered. [Citation.] Essentially, what is necessary is a prima facie case. 'As long as the evidence would support a finding of authenticity, the writing is admissible. The fact conflicting inferences can be drawn regarding authenticity goes to the document's weight as evidence, not its admissibility.' " (*Goldsmith, supra*, 59 Cal.4th at p. 267.) The requisite authentication of photographic evidence need not be provided by the person taking the photograph. (*Id*. at p. 268.) Rather, sufficient foundation may be provided by "other witness testimony, circumstantial evidence, content and location." (*Ibid*.)

We review the trial court's ruling on the admissibility of evidence for an abuse of discretion, and will not disturb the trial court's discretion unless it is shown to have been exercised " 'in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' " (*Goldsmith, supra*, 59 Cal.4th at p. 266.)

A similar claim was made and rejected in *People v. Valdez* (2011) 201 Cal.App.4th 1429 (*Valdez*). The court analyzed the content of the defendant's MySpace social media internet page, including photographs and comments. (*Id*. at p. 1435.) The court explained: "[T]he writings on the page and the photograph corroborated each other by showing a pervading interest in gang matters, rather than an anomalous gesture. Importantly, this consistent, mutually reinforcing content of the page helped authenticate the photograph and writings, with no evidence of incongruous elements to suggest planted or false material. Other key factors include that the evidence strongly suggested the page was Valdez's personal site . . . and that the page was password protected for

posting and deleting content, which tended to suggest Valdez, as the owner of the page, controlled the posted material." (*Id*. at p. 1436.)

The court concluded: "Although Valdez was free to argue otherwise to the jury, a reasonable trier of fact could conclude from the posting of personal photographs, communications, and other details that the MySpace page belonged to him. Accordingly, the trial court did not err in admitting the page for the jury to determine whether he authored it." (*Valdez, supra*, 201 Cal.App.4th at p. 1435.)

Similarly, in *In re K.B.* (2015) 238 Cal.App.4th 989 (*K.B.*), the court found photographs from a cell phone, including screenshots of photographs from an Instagram account, had been sufficiently authenticated based on the testimony of the investigating officers that the same photographs were seen on defendant's Instagram account and he was wearing similar clothing, at the same location, and with several of the same people as in the photographs at the time of his arrest. (*Id*. at pp. 994, 997-998.)

Defendant argues *People v. Beckley* (2010) 185 Cal.App.4th 509 (*Beckley*) is on point. In *Beckley*, the trial court admitted a photograph purportedly showing a witness making a gang sign for impeachment purposes. (*Id*. at p. 514.) A detective testified that he downloaded the photograph from a defendant's MySpace page. (*Ibid*.) In the absence of testimony from someone with personal knowledge that the photograph truly portrayed the witness flashing a gang sign or from an expert that the picture was not a composite or faked, the court in *Beckley* concluded it was not properly authenticated, and therefore, was not admissible. (*Id*. at pp. 515-516.) The court observed that digital photographs can be altered and " '[a]nyone can put anything on the Internet. No web-site is monitored for accuracy and *nothing* contained therein is under oath or even subject to independent verification absent underlying documentation. Moreover, the Court holds no illusions that hackers can adulterate the content of *any* web-site from *any* location at *any* time.' " (*Ibid*.)

*Beckley* has been distinguished and its rationale rejected. The court in *Valdez* distinguished *Beckley*. "Here, in contrast, evidence of the password requirement for posting and deleting content distinguishes *Beckley*, as does the pervasive consistency of the content of the page, filled with personal photographs, communications, and other details tending together to identify and show owner-management of a page devoted to gang-related interests." (*Valdez, supra*, 201 Cal.App.4th at p. 1436.)

The court in *K.B.* was more critical. "To the extent *Beckley*'s language can be read as requiring a conventional evidentiary foundation to show the authenticity of photographic images appearing online, i.e., testimony of the person who actually created and uploaded the image, or testimony from an expert witness that the image has not been altered, we cannot endorse it. Such an analysis appears to be inconsistent with the most recent language in *Goldsmith* . . . . [¶] Furthermore, reading *Beckley* as equating authentication with proving genuineness would ignore a fundamental principle underlying authentication emphasized in *Goldsmith*. In making the initial authenticity determination, the court need only conclude that a prima facie showing has been made that the photograph is an accurate representation of what it purports to depict. The ultimate determination of the authenticity of the evidence is for the trier of fact, who must consider any rebuttal evidence and balance it against the authenticating evidence in order to arrive at a final determination on whether the photograph, in fact, is authentic." (*K.B., supra*, 238 Cal.App.4th at p. 997.)

We agree. Defendant further contends *Valdez* and *K.B.* are distinguishable because, unlike here, there was evidence of a password requirement as well as more details tending to identify the defendant as the owner and manager of the page. (See *K.B., supra*, 238 Cal.App.4th at p. 998; *Valdez, supra*, 201 Cal.App.4th at p. 1436.) We discern no rigid rule in *Valdez* or *K.B.* requiring testimony regarding passwords. Rather, what is important is that the detectives' testimony and the consistency between the Facebook photographs and the photographs extracted from defendant's cell phone were

sufficient to make a prima facie case to justify the trial court's admission of the evidence. As in *Valdez*, defendant was free to argue otherwise to the jury or to introduce his own evidence. But the trial court did not abuse its discretion by admitting the evidence.

### 3. *Motion to Suppress*

Defendant argues the trial court erred in not hearing his motion to suppress the cell phone photographs. The time limits for bringing a motion to suppress for a felony offense are found in section 1538.5, subdivisions (h) and (i). Subdivision (i) generally provides, in relevant part, that "[i]f the property or evidence obtained relates to a felony offense initiated by complaint and the defendant was held to answer at the preliminary hearing, or if the property or evidence relates to a felony offense initiated by indictment, the defendant shall have the right to renew or make the motion at a special hearing relating to the validity of the search or seizure which shall be heard *prior to trial*." (§ 1538.5, subd. (i), italics added.) Subdivision (h) provides an exception: "If, prior to the trial of a felony or misdemeanor, opportunity for this motion did not exist or the defendant was not aware of the grounds for the motion, the defendant shall have the right to make this motion during the course of trial." (§ 1538.5, subd. (h).)

Defendant argues, that "[g]iven the last-minute addition of Pimentel to the prosecution's witness list, *the opportunity* to challenge the validity of the search of the Samsung phone only arose during trial." (Italics added.) But defendant did not need Pimentel to testify at trial in order to have an opportunity to raise these issues prior to trial. Moreover, his counsel explained that if Officer Pimentel had been on the witness list, he would have raised these issues earlier. It thus appears defense counsel conceded he was aware of the grounds for the motion earlier and could have made it sooner. He simply chose not to do so because he apparently thought the motion was irrelevant and the evidence could not have been suppressed. This is not a ground under section 1538.5, subdivision (h) for making a mid-trial motion to suppress. Accordingly, the court did not err in denying the motion as untimely.

## 4. *No Ineffective Assistance of Counsel*

Defendant argues, alternatively, his counsel rendered ineffective assistance by failing to bring a motion to suppress prior to trial. To prevail on this claim, defendant "must establish not only deficient performance, i.e., representation below an objective standard of reasonableness, but also resultant prejudice. [Citation.] Tactical errors are generally not deemed reversible, and counsel's decisionmaking must be evaluated in the context of the available facts. [Citation.] To the extent the record on appeal fails to disclose why counsel acted or failed to act in the manner challenged, we will affirm the judgment 'unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation . . . .' [Citation.] Finally, prejudice must be affirmatively proved; the record must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " (*People v. Bolin* (1998) 18 Cal.4th 297, 333.)

It appears from the record at least one tactical reason defense counsel had for not making a motion to suppress the photographs prior to trial was his belief that these photographs were in fact admissible, just not through the foundation laid by Pimentel. If he was correct in that belief, moving to suppress the evidence before trial would have been unlikely to result in the suppression of the evidence. Therefore, we cannot conclude on direct appeal that counsel did not have a reasonable tactical basis for not pursuing the suppression of this evidence, because we cannot determine on this record whether the motion had merit. Additionally, as to the assertion that some of the photographs were from outside the period on the warrant, defendant cites neither any warrant nor any portion of the exhibit setting forth the extracted information. We therefore cannot conclude this objection had any merit to it. Thus, defendant has failed to affirmatively demonstrate any prejudice. We reject defendant's assertion that his trial counsel was ineffective in not moving to exclude the photographs from the cell phone before trial.

13

*C.*    *Assembly Bill No. 333*

"As relevant here, the STEP [(California Street Terrorism Enforcement and Prevention)] Act created a substantive offense of active participation 'in any criminal street gang' ([]§ 186.22, subd. (a)), and a sentencing enhancement for a felony committed 'for the benefit of, at the direction of, or in association with any criminal street gang' ([]§ 186.22, subd. (b)(1))." (*Valencia, supra*, 11 Cal.5th at p. 829.)  Defendant filed a petition for rehearing arguing his conviction for the substantive offense and the jury's true findings on the sentencing enhancement allegations must be reversed based on newly enacted Assembly Bill No. 333.

Effective January 1, 2022, Assembly Bill No. 333 "amended section 186.22 to impose new substantive and procedural requirements for gang allegations and the substantive offense of gang participation." (*People v. E.H.* (2022) 75 Cal.App.5th 467, 477 (*E.H.*).)

Specifically, "Assembly Bill [No.] 333 narrows the definition of ' "criminal street gang" ' to 'an *ongoing*, *organized association or group* of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more [enumerated criminal acts], having a common name or common identifying sign or symbol, and whose members *collectively* engage in, or have engaged in, a pattern of criminal gang activity.' " (*People v. Lopez* (2021) 73 Cal.App.5th 327, 344 (*Lopez*); see § 186.22, subd. (f).)  "Assembly Bill [No.] 333 also altered the requirements for proving the 'pattern of criminal gang activity' necessary to establish the existence of a criminal street gang." (*Lopez, supra*, at p. 345; see § 186.22, subd. (e).)  "Previously, the prosecution needed to prove only that those associated with the gang had committed at least two offenses from a list of predicate crimes on separate occasions within three years of one another." (*People v. Sek* (2022) 74 Cal.App.5th 657, 665.)  Among the current changes is a requirement that the predicate offenses "commonly benefited a criminal street gang." (Stats. 2021, ch. 699, § 3; see § 186.22, subd. (e)(1).)  "[P]erhaps most

14

notably, Assembly Bill [No.] 333 requires the prosecution to prove the benefit the gang derives from the predicate and current offenses is 'more than reputational.' " (*E.H., supra*, 75 Cal.App.5th at p. 478; see § 186.22, subds. (e)(1), (g).)

"In addition to these substantive changes, Assembly Bill [No.] 333 added section 1109, which establishes a new procedure for trying substantive offenses and enhancements under section 186.22. Section 1109, subdivision (a) requires the court to bifurcate the trial of any gang enhancements, upon the defendant's request." (*E.H., supra*, 75 Cal.App.5th at p. 478.) Section 1109, subdivision (b) further provides: "If a defendant is charged with a violation of subdivision (a) of Section 186.22, this count shall be tried separately from all other counts that do not otherwise require gang evidence as an element of the crime. This charge may be tried in the same proceeding with an allegation of an enhancement under subdivision (b) or (d) of Section 186.22."

*1.      Substantial Evidence*

Defendant argues based on the amendments to section 186.22 that his conviction for count 5 and the jury's section 186.22, subdivision (b) enhancement findings are not supported by substantial evidence.

Because the amendments to section 186.22 increase the threshold for conviction of the substantive offense and the imposition of the enhancement, the amendments to section 186.22 apply retroactively to nonfinal judgments on appeal. (*Lopez, supra*, 73 Cal.App.5th at p. 344.)

The People concede the retroactivity of the amendments to section 186.22 and that their application necessitates remand of count 5 and the gang-related enhancement findings because, at a minimum, no evidence was presented to show that the predicate offenses provided a common benefit to the gang that was more than reputational. We accept the People's concession. " ' " 'Where, as here, evidence is not introduced at trial because the law at that time would have rendered it irrelevant, the remand to prove that

15

element is proper and the reviewing court does not treat the issue as one of sufficiency of the evidence.' " ' " (*People v. Sek, supra*, 74 Cal.App.5th at p. 669.)

Count 5 and the gang-related enhancement findings must be vacated and the matter remanded to give the People the opportunity to retry them in accordance with amended section 186.22. (*E.H., supra*, 75 Cal.App.5th at p. 480; *Lopez, supra*, 73 Cal.App.5th at p. 346.)

### 2. Bifurcation

Defendant argues newly enacted section 1109 requires reversal of all of his convictions and enhancements. We disagree.

The parties dispute whether section 1109 applies retroactively. There is a split of authority on this question. (*People v. Montano* (2022) 80 Cal.App.5th 82, 105 [summarizing split of authority].) We assume without deciding that section 1109 is retroactive. (See *E.H., supra*, 75 Cal.App.5th at p. 480.)

Even if section 1109 is retroactive, defendant has not shown that reversal is required. Defendant argues the failure to bifurcate constitutes structural error, mandating reversal of all of his convictions. Our Supreme Court recently rejected this argument. (*People v. Tran* (August 29, 2022, S165998) __ Cal.6th __ [2022 Cal. LEXIS 5119, at p. *56].) Further, our Supreme Court explained "the *Chapman v. California* (1967) 386 U.S. 18 standard for federal constitutional error" did not apply because " '[t]he admission of evidence, even if erroneous under state law, results in a due process violation only if it makes the trial *fundamentally unfair*.' " (*Ibid*.) As our Supreme Court did in *Tran*, we conclude no such prejudice occurred and "[a]pplying the *People v. Watson* (1956) 46 Cal.2d 818 standard for state-law error," defendant failed to establish prejudice as to count 1 or 7. (*Tran, supra*, 2022 Cal. LEXIS 5119, at pp. *56-61.)

"[N]othing in Assembly Bill [No.] 333 limits the introduction of gang evidence in a bifurcated proceeding where the gang evidence is relevant to the underlying charges." (*People v. Ramos* (2022) 77 Cal.App.5th 1116, 1132.) Prior to trial, the court denied

16

defendant's motion to bifurcate the gang enhancements and count 5. It explained that the underlying offense of attempted shooting, even without a gang enhancement allegation attached to it, would require the introduction of gang evidence "because of the interaction between the defendant and the victim at the liquor store, where the defendant asked him if he was from around here, if he banged. And then there's going to be evidence of the tattoo that has the three dots. [¶] So in this particular case, I find that the gang enhancements and the gang charge are [inextricably] intertwined with one another, and so bifurcation in this particular case is inappropriate and I will deny that request." Defendant acknowledges "the gang evidence was necessary for proof of the charges under the prosecution's theory of guilt in this case."

Further, to the extent bifurcation could have eliminated the introduction of some gang evidence, we agree with the People that any inference of prejudice is dispelled by the jury's verdicts. (See also *People v. Ramos, supra*, 77 Cal.App.5th at pp. 1131-1132 ["Any inference of prejudice resulting from the gang evidence is dispelled by the fact the jury acquitted all the defendants of attempted murder and could not reach a verdict on the attempted voluntary manslaughter charges"].) The jury did not convict defendant of three counts of assault with a semiautomatic firearm (counts 2-4), one count of carrying a loaded firearm with the intent to commit a felony (count 6), and one count of possession of ammunition by a convicted felon (count 8). The record does not suggest any reasonable probability the jury would have reached a different result as to attempted shooting at an occupied vehicle or possession of a firearm by a person who has been convicted of a felony if the gang offense and allegations had been bifurcated. The evidence in support of those counts was strong. As set forth above, defendant asked the victim, "Do you bang?" He later stopped the car unnecessarily and was heard telling Ramirez to "pop it, pop it." "Additionally, the jury was given a limiting instruction regarding its consideration of the gang evidence, which we presume it followed." (*Id.* at p. 1132.) "Under these circumstances, we conclude that the jury's verdict was based on

17

the evidence, not improper bias, and that bifurcation would not have helped [defendant]." (*E.H., supra*, 75 Cal.App.5th at p. 480.)

## III.  DISPOSITION

Defendant's conviction for active participation in a criminal street gang (count 5) and the jury's true findings that defendant committed counts 1 and 7 for the benefit of a criminal street gang are reversed.  The cause is remanded to provide the People an opportunity to retry count 5 and the gang enhancement allegations.  If the People elect not to do so, the trial court shall modify the abstract of judgment accordingly and forward a certified copy to the Department of Corrections.[5]  In all other respects, the judgment is affirmed.

/S/

---
RENNER, J.

We concur:

/S/

---
HULL, Acting P. J.

/S/

---
DUARTE, J.

---

[5]  The court originally stayed the sentence on count 5 and did not impose any gang-related sentence enhancements.  Thus, no section 186.22 enhancements are currently reflected in the abstract of judgment at all.

18