Filed 10/31/22  Virrueta v. Starbucks CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ALICIA VIRRUETA,<br><br>    Plaintiff and Appellant,<br><br>  v.<br><br>STARBUCKS CORPORATION,<br><br>    Defendant and Respondent. | B314036<br><br>Los Angeles County<br>Super. Ct. No. 19STCV08153 |

APPEAL from judgment of the Superior Court of Los Angeles County. Thomas D. Long, Judge. Affirmed.

Keosian Law and Natalie Siran Hairabedian for Plaintiff and Appellant.

Horton, Oberrecht & Kirkpatrick, Kimberly S. Oberrecht and T. Kelly Cox for Defendant and Respondent.

_____

Plaintiff Alicia Virrueta has a long history of gastroenterological symptoms. Her medical records produced in discovery reflect multiple visits to urgent care for nausea, diarrhea, and vomiting dating back to 2014. This lawsuit stems from allegations that a particular bout of gastroenterological symptoms, beginning in late 2017, was caused by a contaminated beverage sold by defendant Starbucks Corporation. The trial court granted Starbucks's motion for summary judgment on the basis that plaintiff failed to show a triable issue of fact as to whether the beverage caused her symptoms. Plaintiff appealed and we now affirm.

## BACKGROUND

On December 10, 2017, plaintiff purchased a beverage from a Starbucks store in Alhambra with whole strawberries in the bottom of the clear cup. Plaintiff drank about half of the beverage and put the rest in her refrigerator. Within three or four hours, she began to feel cramping in her stomach and had diarrhea. Later that evening, she vomited. Plaintiff did not think much of this, however, because she had the same kind of beverage before and it never made her sick. Moreover, she had not noticed anything wrong with the beverage's texture, taste, or anything else.

The next morning, plaintiff felt better but dehydrated. She took the beverage from her refrigerator, finished drinking it, and began eating the whole strawberries in the bottom of the cup. After eating a few, she saw about three maggots in the cup that she believes came from the strawberries. She "got disgusted" and stopped eating the strawberries. She photographed what she believed to be a maggot. The cup and its remaining contents were later thrown out.

2

Plaintiff's opening brief asserts without record citation that it was "at this point"—after seeing the maggots—that she "got so ill that she presented to the urgent care." The record does not support this assertion. The record reflects that, as discussed presently, plaintiff did not go to urgent care until the following day, reporting that her symptoms began the day *before* she saw the maggots.

The following afternoon, December 12, plaintiff presented to Fair Oaks UCC, an urgent care center in Pasadena, complaining of "abdominal pain, nausea, vomiting and diarrhea since Sunday" (the day she bought the beverage at Starbucks). Her visit summary reflects that she reported the maggots in the beverage to Fair Oaks UCC and said the thought of the maggots made her feel nauseous. Fair Oaks UCC administered a number of tests, diagnosed plaintiff with acute gastroenteritis and a urinary tract infection (UTI), and discharged her with instructions.

Plaintiff returned to Fair Oaks UCC at least two more times in the next three weeks and was admitted to Huntington Hospital in early 2018 for assessment and treatment of her UTI and gastroenterological symptoms.

In early 2019, plaintiff sued Starbucks and certain entities related to Fair Oaks UCC and Huntington Hospital on various tort theories. She later dismissed all defendants but Starbucks.

The theory of her complaint was that she was sickened by Escherichia coli (E. coli) which she got from the Starbucks beverage containing maggots. She alleged: "Plaintiff began experiencing severe abdominal pain, nausea, diarrhea, and vomiting following the consumption of the drink. Upon inspection, plaintiff discovered maggots on the freeze-dried

strawberries.  Plaintiff immediately sought medical care and was eventually diagnosed with Escherichia coli (E. Coli), giving rise to economic and noneconomic damages."

After extensive discovery, Starbucks moved for summary judgment.  In support of its motion, Starbucks provided evidence and expert testimony that E. coli was only ever detected in plaintiff's urine, which is not indicative of a foodborne illness, and that the E. coli detected was not a kind that causes gastrointestinal distress.  Starbucks further provided expert testimony that the timing of plaintiff's symptoms—diarrhea starting three to four hours after finishing half her beverage— was incompatible with a reaction to a foodborne pathogen in the beverage.

In further support of its motion, Starbucks proffered an interrogatory requesting that plaintiff state "each fact" on which she contended Starbucks was liable, together with plaintiff's factually devoid response:  "Objection.  This discovery request seeks the legal reasoning and theories of Plaintiff's contentions. Plaintiff is not required to prepare the defendant's case."

Plaintiff opposed Starbucks's motion.  In her opposition she made no effort to rebut Starbucks's evidence that she did not contract E. coli from the beverage.  Instead, for the first time, she claimed she suffered symptoms due to her disgust at seeing maggots in her beverage.  As characterized in her opposition, "[s]he began to eat some of the strawberries when she noticed there were foreign organisms, which she believed to be 'maggots' at the time.  She was immediately disgusted by the thought of consuming the Beverage, which was adulterated or contaminated.  [She] began experiencing severe abdominal pain, nausea, diarrhea, and vomiting."  As evidentiary support for this

4

new theory, she offered the declaration of Dr. M. Eric Gershwin, M.D., M.A.C.P., M.A.C.R., a Distinguished Professor of Medicine at the University of California School of Medicine at Davis, stating in relevant part his "belie[f] more likely than not the drink, either by taste or by noting the maggots, made [plaintiff] sick to her stomach and the cascade of vomiting and diarrhea."

The trial court granted Starbucks's motion and plaintiff appealed.

## DISCUSSION

### 1. Summary Judgment Standard of Review

A defendant moving for summary judgment must show "that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to the cause of action." (Code Civ. Proc., § 437c, subd. (p)(2).) Summary judgment is appropriate where "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (*Id.,* subd. (c).)

Our Supreme Court has made clear that the purpose of the 1992 and 1993 amendments to the summary judgment statute was " 'to liberalize the granting of [summary judgment] motions.' " (*Perry v. Bakewell Hawthorne, LLC* (2017) 2 Cal.5th 536, 542.) It is no longer called a "disfavored" remedy. (*Ibid.*) "Summary judgment is now seen as 'a particularly suitable means to test the sufficiency' of the plaintiff's or defendant's case." (*Ibid.*)

On appeal, "we take the facts from the record that was before the trial court. . . . ' "We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and

sustained.' ' " (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037.)

To the extent an appeal relies on evidence which the trial court excluded, the appellant must show error in such exclusion before we may consider it. We review the trial court's evidentiary rulings at the summary judgment stage for abuse of discretion. (*Ducksworth v. Tri-Modal Distribution Services* (2020) 47 Cal.App.5th 532, 544, overruled on other grounds *Pollock v. Tri-Modal Distribution Services, Inc*. (2021) 11 Cal.5th 918, 932.)

**2.  Plaintiff's Admitted Evidence Does Not Show a Triable Issue Regarding Causation.**

Plaintiff contends two expert declarations created a material factual dispute on causation. But the court sustained defendant's objections to nearly all the testimony she identifies, and plaintiff fails to show error in the trial court's evidentiary rulings. The evidence that was not excluded is immaterial to causation or insufficient to satisfy her burden as a matter of law.

**a.  Declaration of Robert Callaway**

The first piece of evidence plaintiff relies on is the declaration of Robert Callaway, her forensic investigator. Plaintiff claims that Mr. Callaway "opined that the insect species found in [plaintiff's] beverage was a fly species and that fly pupae/larvae are known to act as reservoirs for E. coli bacteria (from feces), which have the potential to cause illness in humans" and "that strawberries can and have carried and transmitted E. coli and freezing these organisms does not kill them." Plaintiff asserts that this testimony "alone provides a question of fact for the jury to consider whether the maggot itself caused [p]laintiff to suffer any injury."

6

As an initial matter, plaintiff grossly mischaracterizes Mr. Callaway's testimony. Mr. Callaway's testimony was that he was "*unable to determine* the insect species" plaintiff photographed in her beverage, but that he "*belie*[*ved*] it [wa]s a fly species." (Italics added.) Mr. Callaway did not state the strength of his belief or the reasons for it.

Starbucks objected to Mr. Callaway's declaration. As to Mr. Callaway's testimony that the organism plaintiff photographed in her beverage might be a fly species, the trial court sustained the objection, explaining that Mr. Callaway's testimony on this point was "speculative and relate[d] [to] or rel[ied] on case-specific facts [Mr. Callaway had] not established independent knowledge of." Plaintiff has made no effort to show error in this evidentiary ruling. As we will not find an abuse of discretion where none is claimed (see *In re K.B.* (2015) 238 Cal.App.4th 989, 995), we do not consider this evidence.

The trial court declined to consider Starbucks's objections to Mr. Callaway's other testimony concerning the capacity of fly larvae or pupae to transmit E. coli to humans, calling it "not material to the disposition of [Starbucks's] motion." We agree. Without admissible evidence that fly larvae or pupae were in the beverage, the testimony about their capacity to transmit disease is irrelevant and does not show a triable issue as to causation.

The trial court also did not consider Starbucks's objections to Mr. Callaway's observation that "strawberries can and have carried and transmitted E. coli" and that "[f]reezing these organisms does not kill them." But plaintiff directs us to no expert testimony (or any other evidence) that she actually *did* contract foodborne E. coli. Such testimony would have been necessary to create a triable issue given Starbucks's expert

7

testimony that she did *not* contract foodborne E. coli. (*Fernandez v. Alexander* (2019) 31 Cal.App.5th 770, 779, quoting *Bozzi v. Nordstrom, Inc.* (2010) 186 Cal.App.4th 755, 761–762 [" 'When the moving party produces a competent expert declaration showing there is no triable issue of fact on an essential element of the opposing party's claims, the opposing party's burden is to produce a competent expert declaration to the contrary' "].)

Finally, plaintiff abandons any claim that she actually contracted E. coli from the beverage in her reply. In response to Starbucks's comprehensive discussion of the reasons that plaintiff cannot show the beverage gave her E. coli, plaintiff offers only that "[Starbucks's] fixation on the E. coli bacterium is nothing more than a red herring." Since the complaint was entirely premised on an E. coli infection caused by the beverage, we consider this a concession that plaintiff has no evidence that E. coli in the beverage caused her illness.

In short, Mr. Callaway's testimony does not create an issue for trial.

### b.    Declaration of Dr. Gershwin

The second piece of evidence plaintiff relies on is the declaration of Dr. Gershwin in support of her "disgust" theory—that either tasting or "noting" the maggots caused her to become ill. Plaintiff directs us to no other evidence supporting this theory, which is the only causation theory she seriously pressed in opposition to Starbucks's motion and now presses on appeal.

Starbucks objected to this testimony on various grounds. The court sustained Starbucks's objections, explaining that Dr. Gershwin's testimony was "speculative and relate[d] [to] or rel[ied] on case-specific facts [Dr. Gershwin had] not established independent knowledge of." In support, the court cited *Sargon*

8

*Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 770 (*Sargon*), as standing for the proposition that "[c]ourts have the power to 'exclude[] . . . expert opinions that rest on guess, surmise or conjecture"; *Garibay v. Hemmat* (2008) 161 Cal.App.4th 735, 743, as standing for the proposition that "[a]n expert opinion that is based on speculation, surmise or 'assumptions of fact . . . without evidentiary support' does not raise a triable issue of material fact"; and *People v. Sanchez* (2016) 63 Cal.4th 665, 685–686, as standing for the proposition that "[a]n expert cannot 'relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception.' "

Because plaintiff refers us to no other evidence in the record to support her disgust theory, she cannot prevail in this appeal without first establishing that the trial court abused its discretion in excluding Dr. Gershwin's testimony. She fails to do so. First, plaintiff failed to claim any such error in her opening brief. Accordingly, we treat the argument as waived. (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 158 [" 'We will not ordinarily consider issues raised for the first time in a reply brief.' "].) This alone is sufficient to affirm.

Second, even if we were to consider plaintiff's argument offered for the first time on reply, the outcome would be the same. We reject plaintiff's attempt to reduce her burden on appeal by arguing that the trial court should have relaxed the rules of evidence in considering Dr. Gershwin's declaration. Specifically, she urges that "[t]he rule that a trial court must liberally construe the evidence submitted in opposition to a summary judgment motion applies in ruling on both the admissibility of expert testimony and its sufficiency to create a triable issue of

9

fact." Not so. As we have previously held, " '[o]nly *admissible evidence* is liberally construed in deciding whether there is a triable issue.' " (*Fernandez v. Alexander*, *supra*, 31 Cal.App.5th at p. 779, quoting *Bozzi v. Nordstrom, Inc.*, *supra*, 186 Cal.App.4th at p. 761.)

Moreover, plaintiff fails to address all grounds on which the trial court excluded Dr. Gershwin's testimony. She asserts only that Dr. Gershwin's declaration established an adequate foundation for his opinions and it was permissible for him to rely on hearsay to form his opinion. But, despite acknowledging that an expert opinion based on speculation cannot establish causation, she did not address the court's determination that Dr. Gershwin's testimony supporting her disgust theory was "speculative." Again, we will not find an abuse of discretion where none is claimed. (*In re K.B.*, *supra*, 238 Cal.App.4th at p. 995.)

In any event, the trial court did not abuse its discretion in excluding Dr. Gershwin's testimony as speculative. Dr. Gershwin does not say whether he thinks plaintiff's illness was induced "by taste" of the beverage or by plaintiff "noting the maggots." He offers only that it was more likely than not caused by *either one* of these two experiences. Underscoring the importance of experts basing their opinions on facts, it was plaintiff's testimony that there was nothing unusual about the taste of her beverage. Dr. Gershwin offered no basis for his stated belief that "noting the maggots" may have made plaintiff sick. Absent some reasoned explanation of the basis for his conclusion, it amounts to nothing more than surmise or conjecture that is properly excluded under Evidence Code section 801. (*Sargon*, *supra*, 55 Cal.4th at p. 770.)

Moreover, Dr. Gershwin's opinion that either tasting or "noting" the maggots caused her to become ill is inconsistent with his other opinion that plaintiff's "hospitalization at Huntington Hospital began with the abdominal pain and vomiting that began *when she consumed* the Starbuck's [*sic*] drink." Plaintiff testified that she had fully consumed the beverage (and experienced symptoms) before she discovered maggots in the strawberries at the bottom of the cup. Dr. Gershwin offers no explanation for his inconsistent opinions that plaintiff's injury either began *before* she perceived the maggots or *as a result* of perceiving the maggots. One or the other opinion (if not both) appears to be speculative for this reason as well.

We acknowledge plaintiff's discussion of *Dryden v. Continental Baking Co.* (1938) 11 Cal.2d 33, 39, and *Medeiros v. Coca-Cola Bottling Co.* (1943) 57 Cal.App.2d 707, 714, in which judicial notice was taken of the notion that mental "shock" relating to otherwise harmless but adulterated food consumed could cause gastrointestinal symptoms. We do not believe that these cases establish as a matter of law that illness following consumption of food always creates a jury question as to whether the food caused the illness. Questions of medical causation may reach a jury only if the plaintiff makes a prima facie case of causation supported by expert testimony expressed to a reasonable medical probability. (*Kline v. Zimmer, Inc.* (2022) 79 Cal.App.5th 123, 131.)

In sum, the only evidence that plaintiff relies on to show an issue for trial was either immaterial to causation or properly excluded. Accordingly, plaintiff did not satisfy her burden imposed by Code of Civil Procedure section 437c,

11

subdivision (p)(2), and Starbucks is entitled to judgment as a matter of law.

## DISPOSITION

The judgment is affirmed.  Starbucks is to recover its costs on appeal.


GRIMES, J.

WE CONCUR:


STRATTON, P. J.


HARUTUNIAN, J.*

---

\* Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.