Filed 7/20/15

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re K.B., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>K.B.,<br><br>        Defendant and Appellant. | A140960<br><br>(San Francisco City & County Super. Ct. No. JW126082) |

**I.**

**INTRODUCTION**

On October 23, 2013, the San Francisco County District Attorney filed a petition charging appellant, age 17, with two counts of possessing firearms. (Pen. Code, § 29610.) On November 19, 2013, after a contested jurisdictional hearing, the juvenile court sustained the petition.

Appellant has appealed, claiming: (1) the evidence did not support the juvenile court's finding that he violated Penal Code section 29610; (2) the trial court erred in admitting incriminating photographs over his objection on the ground they were not properly authenticated; (3) the trial court erred in allowing a police officer to give expert testimony about the make and model of the recovered firearms without first qualifying him as an expert; and (4) the court omitted required information about the maximum term of confinement and custody credits from the dispositional order.

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts III.A., III.C., and III.D.

In the published portion of this opinion we apply our Supreme Court's recent guidance on authentication of electronic evidence in *People v. Goldsmith* (2014) 59 Cal.4th 258 (*Goldsmith*), and conclude there was no error in admitting the photographic evidence in this case. In the unpublished portion of this opinion we reject the balance of appellant's assignments of error, except we agree with the parties that the matter must be remanded for the limited purpose of supplying the mandatory information in the dispositional order that was omitted. However, in all other respects, the judgment is affirmed.

## II.

## FACTS AND PROCEDURAL HISTORY

San Francisco Police Officers Dave Johnson and Eduard Ochoa testified that they were on routine patrol on October 21, 2013. Throughout that day, Officer Ochoa scanned Instagram, a social media website, looking for postings. Officer Ochoa was the "Instagram officer" in his department and had been so for three or four years. His training and experience had taught him "how to monitor and track individuals through Instagram."

Officer Ochoa "was familiar with appellant from prior firearm investigations." He testified, "I saw [appellant], [D.H.] and [Marquis] Mendez, all possessing a firearm at one point or another in these [Instagram] photographs. I knew [appellant] was on probation . . . . I knew Mr. M[endez] was a wanted felon and was [a] prohibited person." In the Instagram photographs appellant wore a black and white print shirt and camouflage pants, and in some of the photos, he appeared to have a firearm tucked into the waistband of his pants. Also, in some of the photos there appeared to be a curtain made of camouflage material covering a window. The officers verified that appellant and Mendez were on active probation subject to search conditions, and were prohibited from possessing any type of firearm. Mendez was also in violation of his probation. Based on the Instagram photographs showing these individuals brandishing firearms, the officers decided to perform a probation search.

2

Officers Ochoa and Johnson, along with other officers, went to the Westpoint Middlepoint apartment complex around 9:23 p.m. "to conduct [a] probation search for [appellant and Mendez,] who [the officers] believed to be at that residence." The officers walked around the building and saw a rear, second-story window covered by a camouflage curtain similar to that appearing in the photographs posted on Instagram. That window was at the back of 59 Hare Street.

The officers heard voices coming from the camouflage-curtained window. Officer Johnson heard other officers knock on the front door of 59 Hare Street and announce their presence. Immediately thereafter, Officer Johnson saw D.H. peek out of the camouflage-curtained window. Several of the officers illuminated D.H.'s face with their flashlights and announced their presence. D.H. withdrew from the window. Seconds later, two handguns were thrown from the camouflage-curtained window. The officers could not identify who threw the firearms out of the window.

Officer Ochoa and other officers entered the front of 59 Hare Street. The officers detained the occupants and conducted a preliminary sweep for weapons. No firearms were found. D.H. was detained descending the stairs from the second floor. Appellant and Mendez were detained in an upstairs bedroom. They were wearing the same clothes they wore in the Instagram photographs that Officer Ochoa had viewed earlier that evening. The officers seized the two discarded handguns, the suspects' cell phones, and the camouflage curtain. Appellant, D.H., and Mendez were arrested for possessing firearms.[1]

The handguns were transported to the police station where Officer Johnson examined them and discovered that they were both loaded. Over defense objection, Officer Johnson testified that one of the seized firearms was "a Smith [&] Wesson . . . [h]andgun," model "SW40F," and the other handgun "was a Glock 23."

---

[1] Mendez was an adult, and did not appear in these proceedings. Appellant and D.H., then both minors, appeared jointly at this contested hearing but with separate counsel. This appeal has been brought solely by appellant.

Cell phones were seized from appellant and Mendez.  Officer Ochoa examined Mendez's cell phone and saw that it contained what appeared to be screen shots of some of the pictures that he saw on Instagram earlier that day.  Officer Ochoa took photographs of the pictures displayed on Mendez's cell phone.

Officer Steven Wood testified that after appellant and his associates were arrested, he used Cellebrite[2] computer software technology to retrieve information from Mendez's cell phone.  Once a Cellebrite search is conducted, the information in the cell phone is sent to a computer.  The officer then simply pushes a button, and a Cellebrite report is generated.  The report lists all of the information stored in the cell phone—photographs; incoming, outgoing, and missed calls; text messages; app information; and emails.

The Cellebrite technology revealed, in detail, the contents of Mendez's phone and printed out that information in a 37-page report.  Included in the Cellebrite report were some of the same incriminating photographs showing appellant and his associates brandishing firearms which were viewed and photographed by Officer Ochoa from the screen of Mendez's phone when appellant was arrested.  At the conclusion of the evidence, over defense counsels' objection, the court admitted into evidence Officer Ochoa's photographs from the screen of Mendez's cell phone and the Cellebrite report containing the identical photographs.[3]

Appellant did not testify and rested on the state of the evidence.  After the court sustained the petition alleging two counts of violating Penal Code section 29610, a contested dispositional hearing was held.  On January 19, 2014, the juvenile court committed appellant, age 18, to the custody of the chief probation officer for out-of-home placement, ordering that he complete an eight-month program at the San Francisco Juvenile Justice Center.  This appeal followed.

---

[2] Various spellings of "Cellebrite" appear in the record.  We adopt the spelling that is contained in the Cellebrite report that appears of record in this matter.

[3] In this case, although the police downloaded significant amounts of data from Mendez's phone—including a contacts list, text messages, call records, and images—the court considered only certain photographs to be relevant evidence.

## III.

## DISCUSSION

### A. Substantial Evidence of Constructive Possession

Appellant challenges the sufficiency of the evidence to support his conviction for two counts of violating Penal Code section 29610. Section 29610 provides: "A minor shall not possess a pistol, revolver, or other firearm capable of being concealed upon the person." Count 1 alleged that on October 21, 2013, appellant unlawfully possessed a Smith & Wesson firearm. Count 2 alleged that on the same date, appellant unlawfully possessed a Glock firearm. He argues the evidence did not show he possessed the firearms that were discarded from the window when the police arrived.

The issue here was whether there was substantial evidence appellant had constructive possession of the weapons. As appellant points out "though [he] was pictured in possession of a single purported firearm, the prosecution contended that appellant constructively possessed both the Smith & Wesson and the Glock thrown from the window at 59 Hare."

One need not physically hold a weapon to possess it: possession may be constructive instead of actual, and possession may be shared by two or more people. (*People v. Sifuentes* (2011) 195 Cal.App.4th 1410, 1417 (*Sifuentes*); see also *People v. Pena* (1999) 74 Cal.App.4th 1078, 1083–1084 [an individual has constructive possession "when the weapon, while not in his actual possession, is nonetheless under his dominion and control, either directly or through others"].) Constructive possession may be established by circumstantial evidence and reasonable inferences from the evidence, but "mere proximity to the weapon, standing alone, is not sufficient evidence of possession. [Citation.]" (*Sifuentes*, at p. 1417.)

We conclude that substantial evidence supports appellant's possession conviction. In considering a sufficiency of the evidence claim in juvenile proceedings, this court applies the same standard of review that is applicable in criminal cases. (*In re Roderick P.* (1972) 7 Cal.3d 801, 808-809.) When a criminal conviction is challenged as lacking evidentiary support, "the court must review the whole record in the light most

favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578; see also *Jackson v. Virginia* (1979) 443 U.S. 307, 318–319.)

Moreover, " '[a]n appellate court must accept logical inferences that the [finder of fact] might have drawn from the circumstantial evidence.' [Citation.] 'Before the judgment of the trial court can be set aside for the insufficiency of the evidence, it must clearly appear that on no hypothesis whatever is there sufficient substantial evidence to support the verdict of the [finder of fact].' [Citation.]" (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573; *People v. Bolin* (1998) 18 Cal.4th 297, 331.)

The evidence showed the handguns recovered by the police were in the apartment at the same time as was appellant. However, appellant argues, as he did at the contested hearing, that his mere presence in the apartment was not enough to connect him to the loaded guns that were tossed out the window when the police arrived. He stresses he "was not in possession of either a Smith & Wesson or a Glock when he was detained and there was no forensic evidence," such as fingerprints or DNA "establishing that appellant actually possessed either at any point."

We agree generally with appellant that presence alone is not enough to support a finding of constructive possession. Dominion and control are essentials of possession, and they cannot be inferred from mere presence or access. Something more must be shown to support inferring of these elements. Of course, the necessary additional circumstances may, in some fact contexts, be slight. (*In re Anthony J.* (2004) 117 Cal.App.4th 718, 728; *People v. Land* (1994) 30 Cal.App.4th 220, 225.)

Contrary to appellant's contention, when viewed in the light most favorable to the court's findings, the evidence went beyond appellant's mere presence in the apartment from which the two loaded handguns were thrown. Several of the photographs entered into evidence depicted appellant with a handgun tucked in his waistband. Certainly as to that weapon appellant cannot seriously contend it was not possessed, let alone

6

constructively possessed. Moreover, in the photographs appellant was wearing the same clothing he was wearing at the time of his arrest, and the background of the picture showed camouflaged curtains, which matched the curtains from the apartment where appellant was arrested. The photos also show appellant and his cohorts standing next to each other posing with the same handguns in the apartment earlier in the day that were later thrown from the window. These additional facts support a reasonable inference that appellant knew of the presence of the handguns in the apartment and exercised the requisite control over them to constitute constructive possession.

In addition, appellant contends there was no evidence "to support a conclusion that what appeared to be a firearm in appellant's waistband in the photos was a real firearm, as opposed to a replica or a toy." As used in Penal Code section 29610, a "firearm capable of being concealed upon the person" is defined as "any device designed to be used as a weapon, from which is expelled a projectile by the force of any explosion, or other form of combustion . . . ." (Pen. Code, § 16530, subd. (a).) Accordingly, a toy firearm, a replica firearm and a pellet gun are not "firearms" as defined by the Penal Code, regardless of how much any of those items may look like real firearm. (See, e.g., *People v. Monjaras* (2008) 164 Cal.App.4th 1432, 1435-1436.)

Suffice to say appellant has offered no evidence, and there was none, from which it could reasonably be inferred that the gun in appellant's waistband was a toy or a replica. (See *People v. Ramon* (2009) 175 Cal.App.4th 843, 851 [reasonable inference may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work].) No "replica" guns were found at 59 Hare Street on the night of appellant's arrest. Only real handguns were found—a loaded Glock and a loaded Smith & Wesson—the same two weapons alleged in the petition.

Because we are required to indulge every reasonable inference the trier of fact could have drawn from the evidence, we find there was enough evidence to support an inference that the gun tucked in appellant's waistband was real, and that appellant exercised constructive possession over the real Smith & Wesson handgun that also was thrown from the apartment window when police arrived and announced their presence.

## B. Admission of Incriminating Photographs Extracted from Cell Phone

Over appellant's objection, the prosecution entered into evidence photographs showing appellant, another juvenile, D.H., and Mendez posing with two handguns. Appellant contends that the trial court erred in admitting the photographs over his objection on the ground they were not properly authenticated because "none of the subjects appearing in the images testified, nor did anyone who was present at the time the photos were taken. Accordingly, there was no witness present at the time the images were created to establish that the [photographs] accurately depicted what they purported to depict—appellant and his co-minor, D.H., in possession of firearms."

The general principles guiding the admissibility of photographic evidence over an objection that the evidence has not been properly authenticated were recently addressed by our Supreme Court in *Goldsmith*, *supra*, 59 Cal.4th 258.[4] "A photograph or video recording is typically authenticated by showing it is a fair and accurate representation of the scene depicted. [Citations.]" (*Id*. at p. 267.) This foundation may—but need not be—supplied by the photographer or by a person who witnessed the event being recorded; in addition, authentication "may be supplied by other witness testimony, circumstantial evidence, content and location" and "also may be established 'by any other means provided by law' ([Evid. Code,] § 1400), including a statutory presumption. [Citation.]" (*Goldsmith*, at p. 268.)

The court in *Goldsmith* explained, "the proof that is necessary to authenticate a photograph or video recording varies with the nature of the evidence that the photograph or video recording is being offered to prove and with the degree of possibility of error. [Citation.] The first step is to determine the purpose for which the evidence is being offered. The purpose of the evidence will determine what must be shown for authentication, which may vary from case to case. [Citation.] The foundation requires that there be sufficient evidence for a trier of fact to find that the writing is what it

---

[4] Because *Goldsmith* was decided after briefing and oral arguments had been waived, on April 27, 2015, we requested and received supplemental briefs from the parties addressing this latest opinion on authentication of visual evidence.

purports to be, i.e., that it is genuine for the purpose offered. [Citation.] Essentially, what is necessary is a prima facie case. 'As long as the evidence would support a finding of authenticity, the writing is admissible. The fact conflicting inferences can be drawn regarding authenticity goes to the document's weight as evidence, not its admissibility.' [Citation.]" (*Goldsmith*, *supra*, 59 Cal.4th at p. 267.)

We review challenges to a trial court's ruling on the admissibility of evidence for an abuse of discretion, and we will not disturb the trial court's ruling " 'except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' [Citation.]" (*Goldsmith*, *supra*, 59 Cal.4th at p. 266.)

We note that the law preceding *Goldsmith* governing authenticating images copied from social media, i.e., Facebook, MySpace, Instagram, has not been entirely consistent.

In *People v. Beckley* (2010) 185 Cal.App.4th 509 (*Beckley*) the court considered whether a photo downloaded from MySpace had been properly authenticated. There, the girlfriend of one of the defendants testified that, when she began dating him, she insisted that he stop associating with his gang. (*Id.* at pp. 513–514.) To impeach her, the prosecution introduced a photo showing her flashing a gang sign. A police officer testified that he had downloaded it from the boyfriend's MySpace page. The defendants objected based on lack of authentication. (*Id.* at p. 514.)

The appellate court in *Beckley* held that the trial court erred in admitting the photo. The court stated, " 'It is well settled . . . that the testimony of a person who was present at the time a film was made that it accurately depicts what it purports to show is a legally sufficient foundation for its admission into evidence.' [Citation.] In addition, . . . authentication of a photograph 'may be provided by the aid of expert testimony. . . .' [Citation.]" (*Beckley*, *supra*, 185 Cal.App.4th at pp. 515-516.) The court then reasoned, "Although defendants conceded that the face in the MySpace photograph was [the girlfriend]'s, the record does not contain . . . evidence sufficient to sustain a finding that it is the photograph that the prosecution claims it is, namely, an accurate depiction of [the girlfriend] actually flashing a gang sign. [The police officer] could not testify from his

9

personal knowledge that the photograph truthfully portrayed [the girlfriend] flashing the gang sign and . . . no expert testified that the picture was not a ' "composite" or "faked" ' photograph. Such expert testimony is . . . critical today to prevent the admission of manipulated images . . . ." (*Ibid.*)

In *People v. Valdez* (2011) 201 Cal.App.4th 1429 (*Valdez*), the defendant argued for reversal of his convictions for attempted murder, assault with a firearm, and street terrorism on the ground that printouts of his MySpace social media Internet page had not been properly authenticated. (*Id.* at pp. 1433-1434.) The reviewing court disagreed, noting the defendant did not dispute that the MySpace page icon identifying the owner of the page displayed the defendant's face, and other material on the page pointed to the defendant as the owner of the page. (*Id.* at p. 1435.) In holding that the trial court did not err, the appellate court noted that particular items on the page, including a photograph of the defendant forming a gang signal with his hand, met the threshold for the jury to determine authenticity. (*Id.* at p. 1436.) The court observed, "The contents of a document may authenticate it. [Citation.]" (*Ibid.*) While the defendant was free to argue otherwise to the jury, a reasonable trier of fact could conclude from the posting of personal photographs, communications, and other details that the MySpace page belonged to him. (*Ibid.*)

In finding the photo in that case was properly authenticated, the *Valdez* court distinguished *Beckley* because there was "evidence of the password requirement for posting and deleting content" and because of the "pervasive consistency" of the MySpace content, "filled with personal photographs, communications, and other details tending together to identify and show owner-management of a page devoted to gang-related interests. [Citation.]" (*Valdez*, *supra*, 201 Cal.App.4th at p. 1436.)

Respondent claims this case is like *Valdez*, citing the password-protected nature of Instagram and the "pervasive consistency" of the content of the disputed photographs. On the other hand, appellant relies heavily on *Beckley* to argue that,"[l]acking witnesses to testify as to personal knowledge that the images accurately depicted what they purported to depict and lacking expert testimony to support a finding that he

10

photographic exhibits were not altered or faked, the evidence as to authenticity in this case was lacking . . . ."

To the extent *Beckley*'s language can be read as requiring a conventional evidentiary foundation to show the authenticity of photographic images appearing online, i.e., testimony of the person who actually created and uploaded the image, or testimony from an expert witness that the image has not been altered, we cannot endorse it. Such an analysis also appears to be inconsistent with the most recent language in *Goldsmith* which explained that in authenticating  photographic evidence, the evidentiary foundation "may—but need not be—supplied by the person taking the photograph or by a person who witnessed the event being recorded. [Citations.]" In addition, authentication "may be supplied by other witness testimony, circumstantial evidence, content and location" and "also may be established 'by any other means provided by law' ([Evid. Code,] § 1400), including a statutory presumption. [Citation.]" (*Goldsmith*, *supra*, 59 Cal.4th at p. 268.)[5]

Furthermore, reading *Beckley* as equating authentication with proving genuineness would ignore a fundamental principal underlying authentication emphasized in *Goldsmith*. In making the initial authenticity determination, the court need only conclude that a prima facie showing has been made that the photograph is an accurate representation of what it purports to depict. The ultimate determination of the authenticity of the evidence is for the trier of fact, who must consider any rebuttal evidence and balance it against the authenticating evidence in order to arrive at a final determination on whether the photograph, in fact, is authentic. As our Supreme Court explained in *Goldsmith*, "[t]he fact conflicting inferences can be drawn regarding authenticity goes to the document's weight as evidence, not its admissibility.' [Citation.]" (*Goldsmith*, *supra*, 59 Cal.4th at p. 267.)

---

[5] In reaching our result, we do not rely on statutory presumptions of authentication, which is the thrust of appellant's supplemental brief distinguishing the analysis in *Goldsmith* from the facts of our case.

11

Measured by these principles, we conclude the incriminating photographs in the instant case were properly authenticated. The foundation for admitting the photographs into evidence was provided by the investigating officers.

As noted, all of the photographic exhibits were obtained from the cell phone seized from Mendez. Officer Woods used the Cellebrite program to extract images on Mendez's cell phone included screenshots of the photographs which had been posted on Instagram, showing appellant, D.H., and Mendez posing with two handguns. The Cellebrite report indicated the photographs were created at 4:48 p.m. on October 21, 2013, approximately five hours before appellant was arrested.

Officer Ochoa testified he routinely monitored appellant's associations and activities by examining an Instagram account associated with appellant. As was explained at trial, Instagram is a web-based photograph sharing platform through which users share user-generated content. Among other things, it provides an application that allows users to upload photos, and share them with others. Officer Ochoa explained that when Instagram users create an account, they are assigned a username and password. Appellant used the screen name "40glock_"

Officer Ochoa also testified that when he viewed appellant's own Instagram account on October 21, 2013, several images appeared of appellant and his cohorts, displaying firearms.[6] The photographs taken from Mendez's cell phone were the same as those observed by Officer Ochoa on Instagram earlier in the day.

Additionally, when appellant was arrested, he was wearing the same clothes and was in the same location depicted in the photographs. He was arrested along with several of the same individuals who appear with him in the photographs.

All of these factors point to the authenticity and genuineness of the photographs. We also note there was an absence of any evidence that the photos or those screen shots taken from Mendez's cell phone were not accurate reproductions of the pictures uploaded onto appellant's Instagram account and stored in the digital medium on Mendez's cell

---

[6] The trial court ordered that the captions associated with the photographs be redacted as hearsay.

12

phone. Based on all of these factors, the trial court was authorized to conclude the prosecution sufficiently authenticated the incriminating photographs.

### C. Necessity of Expert Testimony to Identify Firearms

Appellant claims the juvenile court abused its discretion in allowing Officer Johnson to identify the make and model of the two handguns recovered from the scene of appellant's arrest. Over defense counsel's objection, Officer Johnson testified that he examined the seized handguns and determined that one was "a Smith [&] Wesson . . . [h]andgun," model "SW40F," and the other "was a Glock 23 handgun." The juvenile court overruled the defense objection that the officer had not qualified as an expert in firearms. The court noted Officer Johnson "is a police officer and has been for seven years[,] but you may ask these questions on cross." During cross-examination of Officer Johnson, the defense did not challenge his ability to identify the two handguns at issue in this case.

Appellant contends this testimony should not have been admitted. He argues Officer Johnson should have been qualified as an expert witness because he was allowed to testify to matters beyond common experience without having provided his qualifications to render such an expert opinion. (*People v. Cole* (1956) 47 Cal.2d 99, 103 [expert may testify only about subjects outside of common experience of jurors].) He asserts he was prejudiced because Officer Johnson's identification of the firearms was the only evidence establishing that the firearms recovered from 59 Hare Street "were a Smith & Wesson and a Glock" and were working firearms, as opposed to replicas.

Admission of the testimony was not an abuse of discretion. Officer Johnson's testimony was based on his perception of the guns and was not so far "beyond [the] common experience" that expert testimony was required. (See, e.g., *People v. Gutierrez* (2002) 28 Cal.4th 1083, 1139-1140.) He had been a police officer for more than seven years, and presumably had experience with firearms and their characteristics, and knew the difference between them. (*People v. Lewis* (2008) 43 Cal.4th 415, 503-504 [detective properly testified as lay witness about the significance of marks on exploded shotgun shells].) Officer Johnson's familiarity with firearms permitted him to render opinion

testimony regarding the make and caliber of the handguns seized in this case. (See *People v. Hinton* (2006) 37 Cal.4th 839, 896–897 [rejecting a claim of improper admission of testimony without qualifying the witness as an expert because the evidence established that the witness, a police detective, was "familiar with the use of firearms," which enabled him to offer his opinion].)

### D. Court's Failure to Set the Maximum Term of Confinement and to Calculate Credits

As to the setting of the maximum term of confinement, appellant claims the juvenile court failed to: (a) set the maximum term of confinement; (b) exercise its discretion whether to aggregate the maximum term of confinement on the current and prior sustained petitions; and (3) calculate his custody credits. The Attorney General concedes these claims have merit; and we agree. Remand is necessary for the limited purpose of allowing the juvenile court to amend the disposition order to reflect the omitted information.

## IV.
## DISPOSITION

The matter is remanded for the limited purpose of allowing the court to specify the maximum term of confinement and to exercise its discretion whether to aggregate the maximum term of confinement with previously sustained petitions. The court is also required to calculate appellant's custody credits against that maximum term of confinement. The judgment is otherwise affirmed.

14

_____

RUVOLO, P. J.

We concur:


_____

REARDON, J.


_____

RIVERA, J.


A140960, *In re K.B.*

15

Trial Court:                              San Francisco County Superior Court

Trial Judge:                             Hon. Suzanne Ramos Bolanos

Counsel for Defendant and Appellant:     Suzanne M. Morris, by appointment of
                                         the Court of Appeal under the First District
                                         Appellate Project's Independent Case System

Counsel for Plaintiff and Respondent:    Kamala D. Harris
                                         Attorney General of California

                                         Gerald A. Engler
                                         Senior Assistant Attorney General

                                         Eric D. Share
                                         Supervising Deputy Attorney General

                                         Christina vom Saal
                                         Deputy Attorney General

A140960, *In re K.B.*