Filed 6/30/23

CERTIFIED FOR PARTIAL PUBLICATION[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
|     Plaintiff and Respondent, | E077553 |
| v. | (Super.Ct.No. BAF2001566) |
| LARRY LEE FLETCHER et al., | OPINION |
|     Defendants and Appellants. | |

APPEAL from the Superior Court of Riverside County. Louis R. Hanoian (Retired judge of the San Diego Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) Affirmed in part and reversed in part.

Jean Ballantine and Michael C. Sampson, under appointment by the Court of Appeal, for Defendant and Appellant Larry Lee Fletcher.

Stephen M. Lathrop, under appointment by the Court of Appeal, for Defendant and Appellant Eric Anthony Taylor, Jr.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland , Assistant Attorney General, Daniel Rogers, Amanda

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II. B.

1

Lloyd, Adrian R. Contreras, and Paige B. Hazard, Deputy Attorneys General, for Plaintiff and Respondent.

Following a joint trial, defendants and appellants Larry Lee Fletcher and Eric Anthony Taylor, Jr. were convicted of several crimes stemming from a shooting outside of a convenience store. In the published portion of this opinion, we hold on an issue of first impression that Assembly Bill No. 333 (2021-2022 Reg. Session) (Assembly Bill 333) does not require reversing serious felony and strike priors premised on violations of Penal Code section 186.22. In the unpublished portion, we reject several of appellants' other challenges to their convictions and sentences, reverse on various counts and findings based on other new laws, and remand to the trial court for further proceedings.[1]

## I. BACKGROUND

In December 2020, Fletcher and Taylor were at a convenience store in Hemet and began talking to an unknown male (John Doe). They asked Doe where he was from, and then Taylor told Doe that people around here "have guns." Some moments later, Doe exited the store and got into a car. Fletcher approached Doe's car, and witnesses testified hearing gunshots near the car before Doe managed to drive away. Fletcher was seen holding a gun with his hand outstretched, jogging toward and firing gunshots at the car as it was pulling away. Taylor was seen firing at the car as well.

Fletcher and Taylor were charged with attempted murder (§§ 664, 187, subd. (a); count 1) with personal and intentional discharge of a firearm (§§ 12022.53, subd. (c),

---

[1] Undesignated statutory references are to the Penal Code.

2

1192.7, subd. (c)(8)) and for the benefit of a criminal street gang (§ 186.22, subd. (b)(5)), active participation in a criminal street gang (§ 186.22, subd. (a) (hereinafter § 186.22(a)); count 2), unlawful possession of a firearm (§ 29800, subd. (a)(1); counts 3 (Taylor) and 4 (Fletcher)), assault with a semiautomatic firearm (§ 245, subd. (b); count 5) with personal use of a firearm (§§ 12022.5, subd. (a), 1192.7, subd. (c)(8)) and for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(A)), and unlawful discharge of a firearm at an occupied motor vehicle (§ 246; count 6) with personal use of a firearm (§ 1192.7, subd. (c)(8)) and for the benefit of a criminal street gang (§ 186.22, subd. (b)(4)(B)).  Additionally, Fletcher was alleged to have a prior serious felony conviction as well as a strike prior, and Taylor was alleged to have two prior serious felony convictions and two strike priors (§§ 667, subds. (a), (c), (e)(1), 1170.12, subd. (c)).[2]

At trial, the prosecution's gang expert testified that the convenience store was a place the gang Four Corner Hustler Crips was known to congregate.  The expert stated that it is important to gang members that others know they have guns to instill fear, demand respect, and deter territorial encroachment.  The expert opined that both Fletcher and Taylor were members of the Four Corner Hustler Crips gang.

---

[2] For the unlawful possession of a firearm charge, Taylor (but not Fletcher) was also alleged to have been armed with a deadly weapon (§ 667, subd. (e)(2)(C)(iii)).  That allegation applies only to those, such as Taylor, alleged to have two strike priors.  (See § 667, subd. (e)(2)(C).)

The jury found appellants guilty on all charges and enhancements. The trial court then found the allegations on the prior convictions to be true. Given their strike priors, Fletcher was sentenced to 56 years and four months to life, and Taylor 100 years to life.

## II. DISCUSSION

### A. *Assembly Bill 333*

We begin by considering whether, and to what extent, appellants are entitled to relief under Assembly Bill 333, which narrowed the applicability of certain punishments for offenses involving a criminal street gang. Although we agree with the parties that Assembly Bill 333 requires us to reverse the conviction for active participation in a criminal street gang (count 2) and the gang enhancements (counts 1, 5, and 6), we hold that the new law does not apply to the findings on serious felony and strike priors.

#### 1. *Active Participation Count and Gang Enhancements*

Section 186.22 makes it a crime to actively participate in a criminal street gang. (§ 186.22(a).) Section 186.22 also enhances the punishment for a person convicted of an enumerated felony committed "for the benefit of, at the direction of, or in association with a criminal street gang, with the specific intent to promote, further, or assist in criminal conduct by gang members." (§ 186.22, subd. (b)(1), (4).) Both the active participation crime and the gang enhancement turn on the definition of "criminal street gang."

Assembly Bill 333 narrowed what a "criminal street gang" means. What used to be defined in part as "any ongoing organization, association, or group of three or more

4

persons . . . whose members individually or collectively engage in, or have engaged in, a pattern of criminal gang activity" (former § 186.22, subd. (f)) is now defined in part as "an ongoing, *organized* association or group of three or more persons . . . whose members collectively engage in, or have engaged in, a pattern of criminal gang activity" (§ 186.22, subd. (f), italics added). The amended definition, as before, in turn depends on what a "pattern of criminal gang activity" means.

Assembly Bill 333 also raised the bar for proving a "pattern of criminal gang activity" in various ways. For our purposes, the most relevant change is that the most recent predicate offense used to show a pattern must now be proven to have "occurred within three years of [a] prior offense and within three years of the date the current offense is alleged to have been committed." (Assem. Bill 333, § 3, revised § 186.22, subd. (e)(1).)

These changes to the law brought by Assembly Bill 333 apply retroactively to appellants as their judgments were not final when the amendments took effect. There is no dispute that this portion of Assembly Bill 333 is retroactive. (See *People v. Lee* (2022) 81 Cal.App.5th 232, 237, review granted, Oct. 19, 2022, S275449.)

Appellants would also benefit from these changes. As the People observe, the only possible predicate offenses in the record occurred more than three years before the current offenses, in 2011 and 2015. Thus, there is no evidence of a "pattern of criminal activity," which is a necessary component of establishing a "criminal street gang." (§ 186.22, subds. (e)(1), (f).) If appellants are to be convicted today of violating section

5

186.22, the People must, in a new trial, introduce different evidence of offenses that would prove the pattern of criminal gang activity.

2. *Serious Felony and Strike Priors*

Appellants contend that Assembly Bill 333 also requires us to reverse the true findings on their serious felony and strike priors premised on violations of section 186.22, subsection (b) (hereinafter section 186.22(b)).  The People argue that no such reversal is warranted.  We hold that, if Assembly Bill 333 applies to serious felony and strike priors premised on violations of section 186.22, it would constitute an improper legislative amendment of a ballot initiative.

 Fletcher and Taylor were found to have committed one count of unlawful possession of a firearm (§ 29800, subd. (a)(1)) in 2015 with the additional allegation that it was committed for the benefit of a criminal street gang (§ 186.22(b)(1)).  That gang enhancement made the unlawful possession charge a serious felony (§ 1192.7, subd. (c)(28) (hereinafter § 1192.7(c)(28)); see *People v. Briceno* (2004) 34 Cal.4th 451 (*Briceno*)) and therefore a strike as well at the time Fletcher and Taylor were sentenced (§§ 667, subds. (c), (d)(1), 1170.12, subds. (a), (b)(1)).  They argue that, post-Assembly Bill 333, there can be no true finding unless the 2015 gang enhancements satisfy the newer, narrower requirements.

To explain why we disagree, we first describe in general terms Proposition 21, which added felonies committed for the benefit of a criminal street gang to the list of

"serious" felonies, before focusing on specific features of that ballot initiative and a subsequent one, Proposition 36.

"At the March 7, 2000 Primary Election, the California electorate passed Proposition 21, the Gang Violence and Juvenile Crime Prevention Act of 1998," which "sought to tackle, in 'dramatic' fashion, the onerous problem of gang violence and gang crime." (*Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 897, 906 (*Robert L.*).) The legislative analysis of Proposition 21 stated that the initiative "[a]dds crimes to the serious and violent felony lists, thereby making offenders subject to longer prison sentences." (Ballot Pamp., Primary Elec. (Mar. 7, 2000) analysis of Prop. 21 by Legis. Analyst, summary chart, p. 47.) Among those added to the serious felony list was the one described in section 1192.7(c)(28): "any felony offense, which would also constitute a felony violation of Section 186.22." (Ballot Pamp., *supra*, text of Prop. 21, § 17, p. 125.)

After Proposition 21 became law, some courts construed section 1192.7(c)(28) to apply to only the substantive offense of active participation in a criminal street gang under section 186.22(a) and not the gang enhancement under section 186.22(b). (See, e.g., *Briceno*, *supra*, 34 Cal.4th at pp. 457-458 [describing lower court's holding].) However, our Supreme Court has held that "the definition of 'serious felony' in section 1192.7(c)(28) also includes 'any felony offense' that was committed for the benefit of a criminal street gang within the meaning of section 186.22(b)(1)." (*Briceno*, *supra*, 34 Cal.4th at p. 456.) Thus, although being a felon in possession of a firearm in violation of

7

section 29800, subdivision (a)(1) is not inherently a serious felony, appellants committed serious felonies by violating the provision for the benefit of a criminal street gang.

One consequence of having previously been convicted of a serious felony is that it counts as a strike prior in a subsequent proceeding under the Three Strikes law. (§§ 667, subd. (c), 1170.12, subd. (a); see *People v. Henderson* (2022) 14 Cal.5th 34, 43 ["The Three Strikes law was '[e]nacted "to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of serious and/or violent felony offenses" [citation], [and] "consists of two, nearly identical statutory schemes"'"].) The provisions defining a serious felony for purposes of the Three Strikes law are found in sections 667, subdivision (d)(1) and 1170.12, subdivision (b)(1), both of which in turn refer to section 1192.7, subdivision (c).

Crucially for our purposes, Proposition 21 locked in the definition of serious felonies as of the initiative's effective date. Section 14 of Proposition 21 added section 667.1, which stated that "for all offenses committed on or after the effective date of this act, all references to existing statutes in subdivisions (c) to (g), inclusive, of Section 667, are to those statutes as they existed on the effective date of this act, including amendments made to those statutes by this act." (Ballot Pamp., *supra*, text of Prop. 21, § 14, p. 123.) That definition encompasses section 667, subdivision (d)(1), and hence its reference to section 1192.7(c)(28). Similarly, section 16 of Proposition 21 added section 1170.125, which stated that "for all offenses committed on or after the effective date of this act, all references to existing statutes in Section 1170.12 are to those statutes as they

8

existed on the effective date of this act, including amendments made to those statutes by this act." (Ballot Pamp., *supra*, text of Prop. 21, § 16, p. 124.) Again, that definition encompasses section 1170.12, subdivision (b)(1) and hence its reference to section 1192.7(c)(28) as well. Both sections 667.1 and 1170.125 were later amended in 2012 by Proposition 36, also known as the Three Strikes Reform Act of 2012, such that the definitions of serious felonies are now locked as of November 7, 2012. (See §§ 667.1, 1170.125; Ballot Pamp., General Elec. (Nov. 6, 2012) text of Prop. 36, §§ 3, 5, pp. 107, 109.)

Because the definition of a serious felony for purposes of the Three Strikes law is what constituted a serious felony in 2012, Assembly Bill 333 can only apply if it satisfies Proposition 36's amendment requirements. The last section of Proposition 36 states that, subject to exceptions not applicable here, "[t]he provisions of this act shall not be altered or amended except by" either a statute passed by the Legislature with a two-thirds majority in each house (and subsequently agreed to by the Governor or placed on the next general ballot and approved by a majority of voters) or a statute that becomes effective when approved by a majority of voters. (Ballot Pamp., *supra*, text of Prop. 36, § 11, p. 110.)[3] Assembly Bill 333 was neither a statute that became effective upon voter approval

---

[3] The last section of Proposition 21 states that "[t]he provisions of this measure shall not be amended by the Legislature except by a statute passed in each house by rollcall vote entered in the journal, two-thirds of the membership of each house concurring, or by a statute that becomes effective only when approved by the voters." (Ballot Pamp., *supra*, text of Prop. 21, § 39, p. 131.) Proposition 36, which changed the serious felony lock-in date from 2000 to 2012, was not subject to this restriction because it was enacted by the voters and was not an amendment "by the Legislature."

nor a bill that passed with a two-thirds majority.  The result is that Assembly Bill 333 does not alter the definition of a serious felony or strike prior; to the extent it can be construed to do so, it runs afoul of constitutional requirements regarding legislative amendment of ballot initiatives.

The current split in the Court of Appeal on whether Assembly Bill 333 unconstitutionally amends a *different* provision supports our rationale here.  In *People v. Rojas* (2022) 80 Cal.App.5th 542, 557-558 (*Rojas*), review granted, Oct. 19, 2022, S275835, the court held that Assembly Bill 333 improperly amended Proposition 21 as applied to the gang-murder special circumstance in section 190.2, subdivision (a)(22).  As *Rojas* stated:  "Section 11 of Proposition 21 essentially provided that a certain subset of murders (i.e., gang murders) would be subject to the death penalty or [life without the possibility of parole] under section 190.2.  Assembly Bill 333 would reduce the scope of murders punishable under section 190.2, subdivision (a)(22) in several ways . . . .  In this way, Assembly Bill 333 'takes away' [citation] from Proposition 21" and is therefore "unconstitutional to the extent it would amend that initiative."  (*Rojas*, *supra*, at pp. 554, 557.)  But in another case that was decided days earlier, *People v. Lee* (2022) 81 Cal.App.5th 232, 245, review granted, Oct. 15, 2022, S275449 (*Lee*), a different district reached a contrary conclusion.  Importantly, it did so by noting that the section of Proposition 21 relevant there *lacked* the exact lock-in provisions we have discussed above.  As *Lee* explained:  "In enacting Proposition 21, the electorate clearly knew how to express the intent to freeze a statutory definition.  In sections dedicated to amending

portions of the 'Three Strikes' law, Proposition 21 changed the '"lock-in" date for determining the existence of qualifying offenses (such as violent or serious felonies)' under the 'Three Strikes' law. . . . Given the express time-specific incorporations in [sections] 14 and 16 of Proposition 21, we may safely assume that had the voters also intended section 11 of Proposition 21 [amending the list of special circumstance murders] to make a time-specific incorporation of section 186.22 . . . ., they would 'have said so in readily understood terms.' . . . But there is no such language." (*Lee*, *supra*, at pp. 242-243.) We need not take a view on the application of Assembly Bill 333 to the gang-murder special circumstance here; rather, we simply note that *Lee* found no unconstitutional amendment due in part to the absence of something our case undoubtedly has. (See also *People v. Lopez* (2022) 82 Cal.App.5th 1, 17-25 [applying *Lee* to hold that Assembly Bill 333 did not unconstitutionally amend Proposition 21 in context of gang conspiracy statute].) Although the issue before us is formally whether Assembly Bill 333 unconstitutionally amends Proposition 36, not Proposition 21, *Lee*'s discussion of Proposition 21 applies with equal force here.

Accordingly, we conclude that Assembly Bill 333 does not require us to vacate the true findings on appellants' serious felony and prior strike convictions. However, we reverse the active gang participation count and the gang enhancements and remand to give the prosecution an opportunity to retry them under the new standards.

*B. Other Contentions*

The remainder of our discussion proceeds as follows. First, we consider Fletcher's claim that the jury should have been instructed on self-defense on most of the charges. Second, we consider Fletcher's claim that the trial court erred in admitting into evidence certain photographs and videos from social media. Third, we consider both appellants' claim that the sentences imposed on the unlawful possession of a firearm charges should have been stayed under section 654. Fourth, we consider appellants' other claims of relief under newly enacted laws or recently decided cases. And fifth, we consider Fletcher's claim of cumulative error.

We reject the claims of instructional error, evidentiary error, section 654 sentencing error, and cumulative error. Because Assembly Bill 333 requires a remand, which will at a minimum include resentencing, we need not consider the merits of the other new law claims, all of which implicate only sentencing issues.

*1. Jury Instruction on Self Defense*

Fletcher contends that the trial court erred in failing to instruct the jury on self-defense with respect to all counts except unlawful possession of a firearm (i.e., attempted murder, active participation in a criminal street gang, assault with a semiautomatic firearm, and unlawful discharge of a firearm at an occupied motor vehicle). We assume without deciding that the instruction should have been given but find that any such error would have been harmless.

12

"It is well settled that a defendant has a right to have the trial court, on its own initiative, give a jury instruction on any affirmative defense for which the record contains substantial evidence." (*People v. Salas* (2006) 37 Cal.4th 967, 982 (*Salas*).) "In determining whether the evidence is sufficient to warrant a jury instruction, the trial court does not determine the credibility of the defense evidence." (*Ibid.*) In this context, substantial evidence means "evidence sufficient to 'deserve consideration by the jury,' that is, evidence that a reasonable jury could find persuasive." (*People v. Barton* (1995) 12 Cal.4th 186, 201, fn. 8.) """Doubts as to the sufficiency of the evidence to warrant instructions should be resolved in favor of the accused.""" (*People v. Tufunga* (1999) 21 Cal.4th 935, 944.)

Although we do not weigh the evidence in determining whether error occurred, we weigh the evidence and consider credibility in determining whether a supposed error was prejudicial. (*Salas*, *supra*, 37 Cal.4th at p. 983 [instructional error harmless where "no reasonable jury would believe" the defense evidence "[i]n light of the prosecution's evidence"].) "'We review a claim of instructional error de novo.'" (*People v. Morales* (2021) 69 Cal.App.5th 978, 990.)

Fletcher rests his claim of instructional error solely on the convenience store cashier's testimony at trial. At one point during her testimony, the cashier testified that she heard the first gunshot coming from the white car and then saw people running away. She believed that someone in the white car had shot Fletcher. This was both because, in the cashier's view, Fletcher "took off" from the car and "stumbled." She did not testify

seeing the gunshot itself or anyone else other than Fletcher and Taylor having a gun. When asked whether she agreed that surveillance footage showed Fletcher "simply turn[ing] and walk[ing] away" instead of running, the cashier insisted that the footage was inaccurate: "To my knowledge he ran, but your camera – you're moving it slow or something. He . . . ran from that car."

For the sake of argument, we assume, without deciding, that the jury should have been instructed on self defense. As Fletcher contends, the cashier's testimony suggests that if Fletcher did shoot at the white car, it was in defense of being shot at himself. (See, e.g., CALCRIM 505 [self-defense as a defense to non-homicide crimes requires a reasonable belief of being in imminent danger of suffering bodily injury].)

Nevertheless, we would find the error harmless beyond a reasonable doubt under *Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*). (See *Salas*, *supra*, 37 Cal.4th at p. 984 [finding instructional error under *Chapman* even though "what test of prejudice applies" remains undecided].) This is based both on the strength of opposing evidence and the ultimate weakness of the cashier's testimony.

A security guard testified that she was standing outside of the store at the time of the incident and saw Fletcher fire the first shot while standing at the door of the white car. She stated that she saw Fletcher jog *toward* the car as it was driving away. She also testified that she never saw anything to indicate that any gunfire came from the white car itself. Additionally, according to Patrick Sobaszek, a law enforcement officer who interviewed both Fletcher and Taylor after they were arrested, neither Fletcher nor Taylor

14

stated that they had been shot at, even though they both identified themselves in surveillance videos of the incident and thus placed themselves at the scene.[4]

Conversely, there is ample reason to be skeptical about the cashier's claims. Throughout her testimony, the cashier repeatedly stated that she was not testifying willingly. Before being sworn in, she stated: "Just to let the whole court know, I did not want to be here today." She repeatedly denied telling investigators that she had seen appellants carry guns or fire them, even though a law enforcement officer testified that the cashier did in fact state those things in interviews soon after the shooting. At one point, she challenged the court to arrest her, calling the fact that she had to testify "bullshit." She repeatedly tried to invoke a Fifth Amendment privilege, responding with additional profanities when told she had no such privilege. And after she was excused, she told the parties "[d]on't call me again on this shit" and "[l]et me fucking leave" after being informed she was subject to being recalled.

The prosecutor suggested during the cashier's testimony that her behavior may have been caused by a fear of retribution for testifying. The law enforcement officer who took the cashier's statement after the shooting testified as much, stating that the cashier indicated a fear of testifying because she "works and lives in the same area where the shooting occurred."

---

[4] Neither Fletcher nor Taylor testified at trial.

15

In sum, the cashier did not see the first shot, but the security guard did. No one saw anyone other than Fletcher or Taylor have guns at the time, and neither of those two ever stated that they had been shot at, much less subjectively fearful of what was happening. To the contrary, according to the security guard, Fletcher jogged toward the car as it drove off, not away. And the only testimony suggesting that Fletcher was acting in self-defense was given by a witness whose prior statements indicated otherwise, who purportedly had reason to resist testifying, and who vehemently expressed, through her words and behavior, that she did not want to testify. This all leads us to conclude that no reasonable jury would have accepted an argument of self-defense based on the evidence presented. Accordingly, even assuming that the jury should have been instructed on self defense, the error would have been harmless beyond a reasonable doubt.

2. *Social Media Evidence*

Fletcher contends that photo and video posts from his Facebook account were never properly authenticated and thus should not have been allowed into evidence. We find that the evidence was properly authenticated.[5]

---

[5] We agree with the People's contention that Fletcher forfeited this claim because his counsel did not raise authentication when objecting to the evidence. (See Evid. Code, § 353; *People v. Partida* (2005) 37 Cal.4th 428, 433-434 ["'we have consistently held that the "defendant's failure to make a timely and specific objection" on the ground asserted on appeal makes that ground not cognizable'"].) Nevertheless, in the interest of judicial economy, we will address the argument on the merits. (See *People v. Williams* (2000) 78 Cal.App.4th 1118, 1126 [addressing on appeal issue that would otherwise be forfeited to "forestall a petition for writ of habeas corpus based on a claim of ineffectual counsel"].)

"A photograph or video recording is typically authenticated by showing it is a fair and accurate representation of the scene depicted. [Citations.] This foundation may, but need not be, supplied by the person taking the photograph or by a person who witnessed the event being recorded. [Citations.] It may be supplied by other witness testimony, circumstantial evidence, content and location. [Citations.] Authentication also may be established 'by any other means provided by law' [citation], including a statutory presumption." (*People v. Goldsmith* (2014) 59 Cal.4th 258, 267-268 (*Goldsmith*).) "'As long as the evidence would support a finding of authenticity, the [photo or video] is admissible. The fact conflicting inferences can be drawn regarding authenticity goes to the document's weight as evidence, not its admissibility.'" (*Id.* at p. 267.)

"We review challenges to a trial court's ruling on the admissibility of evidence for an abuse of discretion, and we will not disturb the trial court's ruling '"except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice."'" (*In re K.B.* (2015) 238 Cal.App.4th 989, 995.)

At trial, Sobaszek stated that he is a detective who has been assigned to the regional gang task force for the past two years and that through that assignment had regular contact with members of the Four Corner Hustler Crips gang. He testified that he reviewed posts from a Facebook account he believed belonged to Fletcher. The account was attributed to a person named "Larry Foe," which according to Sobaszek helped suggest that the account was Fletcher's, as "Foe is a slang term used for the Four in Four

17

Corners."  (On the same basis, Sobaszek believed that a Facebook account attributed to "Kink G. Foe" belonged to Taylor.)  Sobaszek also stated that the Larry Foe account contained multiple posts on different dates with photographs of Fletcher.

Fletcher contends that Sobaszek's testimony was insufficient to authenticate the photos and videos because, among other reasons, Fletcher did not testify he had any social media accounts, no one testified about the creation of the posted content, no business records were introduced to authenticate the evidence, and there was no evidence that the posts were not faked or altered.  However, none of these are required for authentication, even if they may be helpful.  Rather, Sobaszek's testimony alone was sufficient to support the posts' authenticity so as to make them admissible.  To the extent conflicting inferences could be drawn—for example, from the lack of evidence that the posts were *not* faked—that would instead go to the posts' weight as evidence, not their admissibility.  (*Goldsmith*, *supra*, 59 Cal.4th at p. 267.)

Fletcher relies on *People v. Beckley* (2010) 185 Cal.App.4th 509 (*Beckley*) in contending otherwise.  In *Beckley*, the court held that the trial court erred in admitting a photograph into evidence where the prosecution's gang witness "could not testify from his personal knowledge that the photograph truthfully portrayed [the defendant] flashing [a] gang sign and . . . no expert testified that the picture was not a '"composite" or "faked"' photograph."  (*Id.* at p. 515.)  However, we agree with a later court's discussion of *Beckley*.  *In re K.B.*, *supra*, 238 Cal.App.4th at p. 997, stated that *Beckley*'s analysis "appears to be inconsistent with" our Supreme Court's analysis in *Goldsmith*.  It noted:

18

"reading *Beckley* as equating authentication with proving genuineness would ignore a fundamental principal underlying authentication emphasized in *Goldsmith*. In making the initial authenticity determination, the court need only conclude that a prima facie showing has been made that the photograph is an accurate representation of what it purports to depict. The ultimate determination of the authenticity of the evidence is for the trier of fact, who must consider any rebuttal evidence and balance it against the authenticating evidence in order to arrive at a final determination on whether the photograph, in fact, is authentic." (*In re K.B.*, *supra*, at p. 997; see *Goldsmith*, *supra*, 59 Cal.4th at p. 267.) The court did not abuse its discretion in admitting the social media posts as there was a sufficient prima facie showing of authenticity. We therefore decline to find error here based on *Beckley*.

*3. Section 654*

Appellants contend that the terms imposed on the unlawful possession of a firearm counts (count 3 for Taylor, count 4 for Fletcher) must be stayed under section 654 because, under the facts here, the possession was necessarily based on the same act that formed the basis of the attempted murder count (count 1). The argument is without merit.[6]

---

[6] Appellants raise a second claim relating to section 654, namely, that even though at the time of sentencing the trial court was required to punish appellants under the provisions providing for the longest potential term when section 654 applies, the longest potential term is no longer required under current law. (See Assembly Bill No. 518 (2021-2022 Reg. Sess.) (Assembly Bill 518).) However, that claim presupposes that section 654 applies, and here the question is whether section 654's bar on multiple punishment actually does apply to the unlawful possession counts. No one disputes that

*[footnote continued on next page]*

Under former section 654, which was applicable at the time appellants were sentenced, "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term, but in no case shall the act or omission be punished under more than one provision." Whether unlawful possession "'constitutes a divisible transaction from the offense in which [an individual] employs the weapon depends upon the facts and evidence of each individual case.'" (*People v. Bradford* (1976) 17 Cal.3d 8, 22.) "'Thus where the evidence shows a possession distinctly antecedent and separate from the primary offense, punishment on both crimes has been approved. On the other hand, where the evidence shows a possession only in conjunction with the primary offense, then punishment for the illegal possession of the firearm has been held to be improper where it is the lesser offense.'" (*Ibid.*; see also *People v. Corpening* (2016) 2 Cal.5th 307, 313 ["Whether a defendant will be found to have committed a single physical act for purposes of section 654 depends on whether some action the defendant is charged with having taken separately completes the actus reus for each of the relevant criminal offenses"]) "A trial court's express or implied determination that two crimes were separate, involving separate objectives, must be upheld on appeal if supported by substantial evidence." (*People v. Brents* (2012) 53 Cal.4th 599, 618.)

Appellants contend that their unlawful possession charges were based on the exact same conduct as that of their attempted murder charges and that there is no substantial

section 654 applies to at least some of the other counts, so we will address the two section 654 claims separately.

20

evidence that they possessed firearms before the moment they fired at Doe's car. Taylor

contends, for instance, that during closing argument, the People stated that the unlawful

possession count was "very simple" because "[y]ou can literally see him on video with

the firearm. He is holding that firearm. He is leveling that firearm. He is firing that

firearm in the direction of that white vehicle." However, this statement does not mean

that the jury was necessarily asked to determine whether appellants unlawfully possessed

firearms at only the moment they attempted to murder Doe. Rather, it is possible and

reasonable to infer that the jury determined appellants had firearms some time at the

convenience store before the shooting and that it could base the charges on that. Thus,

the prosecutor's comment that Taylor could be seen "on video with the firearm"

constituted substantial evidence that he also possessed the firearm some time earlier. As

Taylor emphasizes, there is no evidence of how or when he obtained possession of the

gun seen on video. This does not mean, as Taylor contends, that there is no sufficient

evidence that he and Fletcher possessed the guns at some point before the shooting (such

as when they arrived at the convenience store). Rather, it supports the notion that they

both had guns for some period in the moments leading up to the shooting. (See also

*People v. Jones* (2002) 103 Cal.App.4th 1139, 1147 ["It strains reason to assume that

Jones did not have possession for some period of time before firing shots at the Walter

home"].)

Appellants' reliance on *People v. Venegas* (1970) 10 Cal.App.3d 814 is misplaced. There, a witness testified that the defendant was "'trying to take the gun from some other people.'" (*Id.* at p. 820.) Thus, as the court held, "the evidence show[ed] a possession only at the time defendant shot" the victim. (*Id.* at p. 821; see also *People v. Ratcliff* (1990) 223 Cal.App.3d 1401, 1412 [*Venegas* held that "if the evidence demonstrates at most that fortuitous circumstances put the firearm in the defendant's hand only at the instant of committing another offense, section 654 will bar a separate punishment for the possession of the weapon by an ex-felon"].) Unlike in *Venegas*, there is no evidence to suggest that appellants began to possess the guns only at the exact moment they fired them at Doe.

In a related argument applicable only to him, Taylor contends that the allegation that he committed unlawful possession of a firearm while "armed" with a "deadly weapon" supports the notion that his unlawful possession and attempted murder charges were based on the same physical act, namely the attempted murder captured on surveillance footage. (See § 667, subd. (e)(2)(C)(iii).)[7] Although the People did not address this argument in their respondent's brief, we find it unmeritorious; the term "armed" means only that a weapon is nearby and available for use during a crime in addition to being in a person's possession. "A defendant is armed if the gun has a facilitative nexus with the underlying offense (i.e., it *serves* some purpose in connection

_____

[7] Only Taylor was specially alleged to have unlawfully possessed a firearm while armed with a deadly weapon because the allegation only applies to two-strike defendants, and only Taylor was alleged to have had two strike priors. (See § 667, subd. (e)(2).)

22

with it); however, this requires only that the defendant is aware during the commission of the offense of the nearby presence of a gun *available* for use offensively or defensively, the presence of which is not a matter of happenstance." (*People v. Elder* (2014) 227 Cal.App.4th 1308, 1312.) The special allegation does not imply that counts 1 and 3 were based on the same physical act.

### 4. *Newly Enacted Laws and Decided Cases*

Appellants contend that they are entitled to benefits provided by two newly enacted laws and two recently decided cases: Senate Bill No. 567 (2021-2022 Reg. Sess.) (Senate Bill 567), Assembly Bill 518, *People v. Tirado* (2022) 12 Cal.5th 688, and *People v. Dueñas* (2019) 30 Cal.App.5th 1157. However, each of these involve issues that arise only at sentencing. (See *People v. Ross* (2022) 86 Cal.App.5th 1346, 1352 [Senate Bill 567 amended the determinate sentencing law "to require that when a statute specifies three potential terms of imprisonment, a court must presumptively impose the middle term"]; *People v. White* (2022) 86 Cal.App.5th 1229, 1236 ["Assembly Bill 518 amended section 654" such that "a trial court is no longer required to punish under the longest possible term of imprisonment when multiple offenses are based on the same act or omission"]; *Tirado*, *supra*, 12 Cal.5th at p. 692 [holding that a court is not "limited to imposing [a] section 12022.53[, subdivision ](d) enhancement or strik[e] it" and may instead "strike the . . . enhancement found true by the jury and . . . impose a lesser uncharged statutory enhancement"]; *Dueñas*, *supra*, 30 Cal.App.5th at p. 1164 [holding that court must hold an ability to pay hearing before imposing certain fines and fees at

23

sentencing].)  Because Assembly Bill 333 entitles a defendant to a "full resentencing" (see *People v. Buycks* (2018) 5 Cal.5th 857, 893 ["when part of a sentence is stricken on review, on remand for resentencing 'a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances'"]), appellants may raise (or renew) these issues with the trial court at that time.[8]

### 5.  *Cumulative Error*

Lastly, we briefly address Fletcher's claim of cumulative error.  "[A] series of trial errors, though independently harmless, may in some circumstances rise by accretion to the level of reversible and prejudicial error."  (*People v. Hill* (1998) 17 Cal.4th 800, 844.)  Because we have identified only a single error (and even then, only assumed error for the sake of argument), there are no errors to accrete, so the claim is without merit.

### III.  DISPOSITION

Defendants' convictions on count 2 and the gang enhancements on counts 1, 5, and 6 are reversed, and their sentences are vacated.  The matter is remanded for the trial court to (1) provide the prosecution an opportunity to retry the active gang participation offense and gang enhancements under the law as amended by Assembly Bill 333; (2) provide the prosecution an opportunity to seek upper term sentences under the law as

---

[8]  As to Senate Bill 567, on remand the People may seek upper term sentences. (See § 1170, subd. (b)(2) [allowing for trial bifurcation on aggravating circumstances].) Additionally, we note that nothing in our opinion precludes Fletcher or Taylor from bringing motions under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 at resentencing.

24

amended by Senate Bill 567; and (3) after any retrial, or on remand if the prosecution elects not to conduct a trial, resentence defendants.  The judgment is otherwise affirmed.

CERTIFIED FOR PARTIAL PUBLICATION

RAPHAEL_____

J.

We concur:

MILLER_____

Acting P. J.

SLOUGH_____

J.